UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER DOMINGUEZ, *as an individual and on behalf of all others similarly situated,*

Plaintiff,

v.

LEPRINO FOODS COMPANY, *a Colorado corporation,*

Defendant.

Case No. 1:22-cv-01018-KES-EPG

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION BE GRANTED, AND DENYING DEFENDANT'S REQUEST FOR LEAVE TO FILE A SUR-REPLY

(ECF Nos. 41, 45).

OBJECTIONS DUE WITHIN THIRTY DAYS

Plaintiff Christopher Dominguez ("Plaintiff") is a former hourly, non-exempt employee of Defendant Leprino Foods Company who worked at Defendant's Lemoore West facility. Plaintiff alleges that Defendant violated state labor laws by not paying Plaintiff and the proposed class members meal and rest period premiums or sick pay premiums at the correct regular rate of pay. Plaintiff also alleges that Defendant provided inaccurate wage statements to Plaintiff and other proposed class members.

Plaintiff seeks class certification of three proposed classes based on Plaintiff's meal and rest period premium claims, sick pay premium claims, and wage statement claims. Defendant opposes. For the following reasons, the Court recommends that Plaintiff's motion for class

certification be granted.[1] The Court also denies Defendant's request to file a sur-reply. (ECF No. 45).

**I. PROCEDURAL BACKGROUND**

On June 28, 2022, Plaintiff initiated this action by filing a class action complaint in California Superior Court for the County of Kings. (ECF No. 1-1). Defendant subsequently removed the case to the United States District Court for the Eastern District of California on August 12, 2022. (ECF No. 1 at 9[2]; *see also* Docket).

On November 30, 2022, Defendant filed a motion to consolidate this case with another case pending in the Eastern District, *Dominguez v. Leprino Foods Company*, Case No. 1:22-cv-01431-ADA-EPG. (ECF No. 14).[3] Because Plaintiff's motion to remand that case was granted on October 27, 2023, Defendant's motion to consolidate was denied as moot on November 2, 2023. (ECF No. 27).

Pursuant to a stipulation of the parties, Plaintiff filed his First Amended Complaint on February 14, 2024. (ECF Nos. 31).

On March 29, 2024, Plaintiff filed a motion for class certification. (ECF No. 41). Defendant filed an opposition to Plaintiff's class certification motion on May 24, 2024. (ECF No. 43). On June 14, 2024, Plaintiff filed a reply to Defendant's opposition (ECF No. 44). Defendant filed a request for leave to file a sur-reply on June 20, 2024. (ECF No. 45).

The Court held a hearing on the motion for class certification on July 12, 2024. (ECF No. 48).

**II. PLAINTIFF'S FIRST AMENDED COMPLAINT**

In Plaintiff's First Amended Complaint (ECF No. 31), Plaintiff alleges he was an hourly, non-exempt employee of Defendant at Defendant's Lemoore West facility from about October 2015 to about June 1, 2022. (*Id.* at 3; *see also* ECF No. 41 at 9). Plaintiff's amended complaint

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and District Judge Kirk E. Sherriff's Standing Order in Civil Cases. (*See* ECF No. 35-1 at 2).

[2] Cited page numbers refer to the pagination appearing at the bottom of each page, not the blue page numbers generated by the CM/ECF system. Citations utilizing the blue page numbers generated by the CM/ECF system are indicated by "ECF p."

[3] Plaintiff filed a Notice of Related Cases on October 6, 2022, advising the Court that he had filed a PAGA action pending in Kings County Superior Court, Case No. 22C-0317. (ECF No. 8).

alleges four causes of action for violations of California Labor Code[4] §§ 201-204, 226, 226.7, 246, and 512, and California Business and Professions Code §17200, *et seq*.

Plaintiff's first cause of action alleges that, during the relevant time period, Defendant paid out meal and/or rest period premiums at an employee's base hourly rate of pay, which did not include non-discretionary incentive pay such as shift differentials, rather than at the regular rate of pay as required by Labor Code §§ 226.7 and 512. Plaintiff alleges that he and other members of the proposed meal and rest period class "are owed additional meal and rest period premiums based on the correct, higher rate of pay." (ECF No. 31 at 9). Plaintiff also alleges that Defendant owes him and other class members who separated from employment additional compensation pursuant to Labor Code § 203.

Plaintiff's second cause of action alleges that, during the relevant time period, Defendant paid sick pay premiums at an employee's base hourly rate of pay, which did not include non-discretionary incentive pay such as shift differentials, rather than at the regular rate of pay as required by Labor Code § 246. Plaintiff also alleges that he and other members of the proposed Sick Pay Class and Meal/Rest Period Class are entitled to waiting time penalties under Labor Code §§ 201-203.

Plaintiff's third cause of action alleges that the wage statements provided by Defendant to Plaintiff and other members of the proposed Meal/Rest Period Class and Wage Statement Class were inaccurate. These inaccuracies were due to the underlying meal and rest period premium violations and because the statements failed to accurately identify an employee's total number of hours worked, gross wages earned, and net wages, including in instances where an employee was paid overtime and/or shift differentials. As a result, an employee's "total hours worked" do not add up to the actual total hours worked. Plaintiff alleges Defendant's wage statement practice and policy during the relevant time period violated Labor Code § 226.

Plaintiff's fourth cause of action alleges a claim for unfair and unlawful business practices pursuant to California Business & Professions Code section 17200, *et seq*., based on the underlying meal and rest period premium and sick pay premium claims.

Lastly, the amended complaint addresses class certification requirements under Federal

[4] References in this order to "section [XXX]" or "Labor Code" refer to the California Labor Code.

Rule of Civil Procedure 23(a). The amended complaint contends that the members of each class are so numerous that joinder is impracticable; that class members are readily ascertainable using Defendant's own records; that Plaintiff and Plaintiff's counsel are adequate representatives for each of the proposed classes; that there are "predominant common questions of law and fact and a community of interest amongst Plaintiff and the claims of the Class" regarding Defendant's policies and practices; and that Plaintiff's claims are typical of the proposed classes because Plaintiff was subject to the same policies and practices. The amended complaint also contends that a class action is proper because it is more efficient than requiring individual employees to bring their own suits, Defendant would have an "unconscionable advantage" over individual plaintiffs, and separate actions would risk inconsistent judgments. (*Id.* at 8).

## III. MOTION FOR CLASS CERTIFICATION

### A. Plaintiff's Motion

Plaintiff seeks certification of the following proposed classes:

- **Meal/Rest Period Class:** All current and former non-exempt employees of Defendant who: (i) worked at Defendant's non-union Lemoore West facility in Lemoore, California; and (ii) earned non-discretionary incentive compensation and meal/rest period premiums during the same workweek, at any time from June 28, 2021, to November 7, 2021. (ECF No. 41 at 2)
- **Sick Pay Class:** All former non-exempt employees of Defendant who: (i) worked at Defendant's non-union Lemoore West facility in Lemoore, California; (ii) received payment of non-discretionary incentive compensation and sick pay during the same workweek during the period of June 28, 2019, to May 2, 2021; and (iii) whose employment ended at any time from June 28, 2019, through the present. (*Id.* at 2-3).
- **Wage Statement Class:** All current and former non-exempt employees of Defendant in the State of California who received the payment of overtime and/or shift differential wages, at any time from June 28, 2021, to the present. (*Id.* at 2).[5]

[5] At the July 12, 2024, hearing, Plaintiff's counsel Kristen M. Agnew stated that it would be appropriate to make December 31, 2023, the cut-off date for the Wage Statement Class. The Court invites the parties to file a stipulation so limiting the period.

**B. Defendant's Opposition**

Defendant's opposition primarily argues that the Wage Statement Class cannot be certified because there is no evidence that the wage statements themselves were unlawful, and thus Plaintiff and the proposed Wage Statement Class were not subject to any illegal conduct under Labor Code section 226(a)(2). Defendant also argues that whether the wage statements complied with the Labor Code will require individualized inquiries, including whether each Wage Statement Class Member viewed the wage statements, the extent of each member's knowledge, each member's unique circumstances, and a consideration of the state of Defendant's knowledge throughout the class period.

Defendant also briefly challenges typicality of Plaintiff's claims regarding the Meal/Rest Period Class, as well as Plaintiff's adequacy as a class representative for each of the proposed classes.

Notably, aside from adequacy, Defendant makes no challenge to certification of the Sick Pay Class.

**C. Plaintiff's Reply**

Plaintiff's reply points out that Defendant did not dispute that the numerosity requirement has been met for the proposed classes, nor does Defendant contend that Plaintiff's counsel is inadequate. Similarly, Plaintiff emphasizes that Defendant presents no arguments against certifying the Sick Pay Class. (ECF No. 44 at 8) (citing Docket Entry No. 43). Plaintiff also argues that he is an adequate representative and that his claims are typical of the Meal/Rest Period and Wage Statement classes.

Further, Plaintiff contends that Defendant's arguments against certifying the Wage Statement Class improperly concern the merits, and the question of whether Defendant's wage statements comply with the Labor Code is capable of class-wide resolution. Lastly, Plaintiff asserts that because section 226(e) of the Labor Code uses an objective standard to define "injury," no individualized showing of harm for each class member is required. To this end, Plaintiff contends that the Court should not consider the employee declarations submitted by Defendant in support of their opposition.

\\\

**D. Defendant's Request for Sur-Reply**

On June 20, 2024, Defendant filed a request for leave to file a sur-reply. (ECF No. 45). Defendant seeks leave to respond to Plaintiff's argument that the Court should exclude the employee declarations submitted in support of Defendant's opposition, which was raised for the first time in Plaintiff's reply. Alternatively, Defendant requests oral argument.

## IV. LEGAL STANDARDS

**A. Class Actions Generally**

For class certification, the proposed class must satisfy the four threshold requirements of Federal Rule of Civil Procedure 23(a):

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.*, 564 U.S. at 349 (internal quotation marks and citations omitted).

In addition to the requirements of Rule 23(a), "the proposed class must satisfy at least one of the requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Pursuant to Rule 23(b)(3), a court may certify a class only if it determines that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]." *Dukes*, 564 U.S. at 350. The Supreme Court has recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest in the certification question." *Dukes*, 564 U.S. at 350 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). Rule 23(b)(3) only "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013) (emphasis in original); *see also Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23(a) are satisfied by a preponderance of the evidence.") (citing cases). However, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

**B. Rule 23(a) Requirements**

**1. Numerosity**

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Telephone Co. of the Northwest v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980) (noting that a class with only 15 members "would be too small to meet the numerosity requirement"). Courts in the Ninth Circuit have found the requirement satisfied when the class is composed of as few as thirty-nine members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (*citing Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-four, and seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810, 103 (1982) (additional citations omitted)).

**2. Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require class members to "have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. A common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Olean*, 31 F.4th at 663 (*citing Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "Commonality is necessarily established where there is a class-wide policy to which all class members are subjected." *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022) (*citing Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir.

2014)). Further, "[e]ven a single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory requirement for all class actions." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020) (*citing Dukes*, 564 U.S. at 350). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.*

**3. Typicality**

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020 (noting that this standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical."). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *superseded by statute on other grounds as stated in Aquilina v. Certain Underwriters at Lloyd's London*, No. 1:18-CV-00496-ACK-KJM, 2021 WL 3611027, at *6 (D. Haw. Aug. 13, 2021) (citation omitted).

**4. Adequacy of Representation**

Before the Court can certify a class, the Court must be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations omitted) (alteration in original). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest

with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

**C. Rule 23(b) Requirements**

Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623) (internal quotation marks omitted). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* As set forth by the Supreme Court,

> The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 577 U.S. at 453 (internal citations and quotation marks omitted).

**2. Superiority**

Rule 23(b)(3) provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four metrics pertinent to superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* The Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should look to "manageability as one component of the superiority inquiry." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)) (internal quotation marks omitted).

## IV. CLASS CERTIFICATION ANALYSIS

### A. Meal/Rest Period Class

#### 1. Summary of Parties' Arguments regarding the Meal/Rest Period Class

Plaintiff's motion first discusses Defendant's alleged policies pertaining to the payment of meal and rest premiums for Lemoore West employees. Defendant pays meal and rest period premiums to non-exempt employees as a matter of policy, but between June 28, 2018, and November 7, 2021, Defendant did so only at the employee's base hourly rate of pay. (ECF No. 41 at 10). As a result, premiums paid to employees "necessarily excluded other forms of non-discretionary pay, such as shift differentials." (*Id.*).

Plaintiff argues that the Meal/Rest Period Class should be certified because all Rule 23 requirements have been met. First, Plaintiff asserts that the Meal/Rest Period Class is sufficiently numerous and ascertainable through Defendant's own records and timekeeping methodologies. Second, Plaintiff asserts that commonality is established because the claims of the Meal/Rest Period Class present a common question of liability, i.e., "whether Defendant's admitted policy of excluding non-discretionary incentive compensation from the calculation of meal and rest period premiums violates Labor Code section 226.7," and can be adjudicated on a class-wide basis through cross-motions for summary judgment. (ECF No. 41 at 15-16). Third, Plaintiff argues that his claims are typical of the Meal/Rest Period Class because Plaintiff was subject to the same policies and practices resulting in the underpayment of meal and rest premium wages. Fourth, Plaintiff states that he is an adequate class representative, and that class counsel is competent and experienced to prosecute the claims of the class.

Lastly, Plaintiff argues that the Rule 23(b) requirements have also been met. Plaintiff

contends predominance is satisfied because common issues predominate over individualized issues and "can be completely determined from Defendant's own payroll records without the need for any individualized proof or testimony." (*Id.* at 24). As to superiority, Plaintiff asserts that a class action is the superior method for adjudication because the claims are based on uniform practices that can be efficiently litigated on a class-wide basis, Defendant's own records can be used to show violations and calculate damages, and class members are unlikely to prosecute such claims on their own due to financial cost and fear of retaliation. Plaintiff also contends that a class-wide trial would be manageable because, "the parties can file cross-motions for summary judgment to decide dispositive legal issues pertaining to Defendant's liability." (*Id.* at 25).

Defendant's Opposition only contests the typicality and adequacy requirements for this class. Defendant argues Plaintiff cannot show that his claims are typical of the Meal/Rest Period Class because Plaintiff testified that he "never received any penalty pay for rest breaks." (ECF No. 43 at 22) (citing Plaintiff's Deposition, ECF No. 43-1 at 147:17-19; *see id.* at 146:8-147:16). Finally, Defendant argues that Plaintiff is an inadequate class representative because Plaintiff has provided conflicting testimony that calls into question his credibility, understanding of the claims at issue, and his willingness to prosecute this action. (*Id.* at 23-24).

In reply, Plaintiff points out that "Defendant does not dispute that it uniformly miscalculated the regular rate of pay used to pay Labor Code section 226.7 premium pay to Meal/Rest Period Class Members." (ECF 44 at 9). Plaintiff also argues he is an adequate representative for four reasons: (1) Plaintiff is not indifferent to the experiences of putative class members and his lack of personal knowledge of others' experiences does not establish inadequacy; (2) Plaintiff's testimony does not call his credibility into question because he could not be charged with knowing if the "penalty pay" appearing on his wage statement was for a missed meal or rest period, only that he received penalty pay; (3) Defendant does not dispute that Plaintiff has a general understanding of the case and its claims; and (4) Defendant's argument that Plaintiff would not have filed a class action had he known Defendant was now paying the correct rate for meal and rest period premiums shows only that Plaintiff would not pursue a non-existent claim. (*Id.* at 6-8). Lastly, Plaintiff argues that the typicality requirement is met for this class because Plaintiff and the Meal/Rest Period Class, "are in substantially identical positions *vis-à-vis*

Defendant's standardized policy of paying Section 226.7 premiums at a rate that is less than the regular rate of pay," and thus have experienced the same injury. (*Id.* at 10).

**2. Rule 23(a) Requirements**

**a. Numerosity**

Plaintiff has identified 902 individuals that fall within the proposed Meal/Rest Period Class, which Defendant does not dispute. (ECF No. 41 at 13; *see also* Deposition of Jenny Robertson, ECF No. 41-7 at 21:17-19). This figure is sufficiently numerous that joinder of all class members is impracticable. Accordingly, the Court finds that the numerosity requirement has been met.

**b. Commonality**

Plaintiff states that the common question to be answered among the Meal/Rest Period Class is, "whether Defendant's admitted policy of excluding non-discretionary incentive compensation from the calculation of meal and rest period premiums violates Labor Code section 226.7." (ECF No. 41 at 15).

California Labor Code section 226.7 provides, in relevant part:

> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.
>
> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's *regular rate of compensation* for each workday that the meal or rest or recovery period is not provided.

Cal. Lab. Code § 226.7(b)-(c) (emphasis added). An employee's "regular rate of compensation has the same meaning as 'regular rate of pay' in [Labor Code] section 510(a)[6] and encompasses

[6] California Labor Code § 510(a) provides, in relevant part: "(a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a

not only hourly wages but all nondiscretionary payments for work performed by the employee." *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal.5th 858, 878 (2021).

Plaintiff has presented evidence to show that, between June 28, 2018, and November 7, 2021, Defendant had a practice of paying "penalty pay" to non-exempt employees at its Lemoore West facility at the employees' base hourly rate rather than the regular rate of compensation. For example, Plaintiff relies on the deposition testimony of Jenny Robertson, Defendant's PMQ:

Q. And as reflected on this wage statement, the employee received penalty pay in the amount of $31.93. Do you see that?

A. Yes.

Q. And does the penalty pay reflect the payment of a meal or rest period premium?

A. Yes.

Q. And the rate of the penalty pay is the same as the employee's base hourly rate, correct?

A. Correct.

Q. As a matter of practice, during the period of June 28, 2018, to November 7, 2021, did Leprino always pay meal or rest period premiums at an employee's base hourly rate?

A. Yes.

Q. So even when an employee earned both a shift differential and a meal or rest period premium, the meal or rest period premium was always paid at the base hourly rate?

A. Yes.

(ECF No. 41-7 at 62:18 – 63:13).

Defendant does not dispute that this practice was in place during the relevant period, nor does Defendant dispute that Plaintiff can establish commonality as to the Meal/Rest Period Class. Rather, Defendant points out that since 2021, it has "included all nondiscretionary incentive pay when calculating meal and rest break premiums and sick pay for Lemoore West employees." (ECF No. 43 at 6) (citing Deposition of Jenny Robertson, ECF No. 43-1 at 56:11 – 57:14, 63:14 – 64:1). However, this change to Defendant's practice after the period for the proposed Meal/Rest

---

workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work."

Period Class has no bearing on whether Defendant's *prior* practice violated Labor Code section 226.7.

Accordingly, the Court concludes that commonality has been established for this class.

**c. Typicality**

Plaintiff argues that typicality is a low threshold and has been met because Plaintiff "seeks recovery based upon the same legal theories and factual circumstances as the proposed classes he seeks to represent." (ECF No. 41 at 23). Specifically, Plaintiff argues he "was subject to the same common policies and practices of Defendant that resulted in the underpayment of meal/rest period premium wages and sick pay compensation." (*Id.*) (citing to Plaintiff's Declaration, ECF No. 47-1 at 2, ¶¶ 6-7). In response, Defendant argues typicality is not met because Plaintiff has presented no evidence that he received any penalty pay for rest breaks. (ECF No. 43 at 22) (citing to Plaintiff's Deposition, ECF No. 43-1 at 147:17-19 (Q: "Okay. So it sounds like you never received any penalty pay for rest breaks; is that correct?" A: "That's correct.").

As the Ninth Circuit has explained, "[t]he test for typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Jones v. Shalala*, 64 F.3d 510, 514 (9th Cir. 1995) (citing *Hanon*, 976 F.2d at 508). The claims of the Meal/Rest Period Class stem from Defendant's alleged underpayment of meal and rest period premiums. Plaintiff, a former non-exempt employee of Defendant's Lemoore West facility, has offered evidence establishing the existence of this practice, which applied to all Defendant's non-exempt Lemoore West employees. Additionally, although stated in the context of Plaintiff's adequacy as a representative, Plaintiff's reply points out, "[W]hen paying Section 226.7 premium wages, Defendant's wage statements make no distinction between a 'meal period' and 'rest period' premium . . . Thus, as a practical matter, Plaintiff cannot be charged with knowing the distinction of whether the 'penalty pay' that appears on the wage statement is the product of a missed/late/interrupted meal period, as opposed to a missed/late/interrupted rest period." (ECF No. 44 at 7) (citations omitted); *see also* ECF No. 41-7 at ECF p. 61 (Plaintiff's wage statement with payment date September 27, 2019, indicating "Penalty Pay" of "1.00 Hours"). Indeed, Labor Code section 226.7 states that pay at an employee's regular rate of compensation is required when "an employer fails to provide an employee a meal **or** rest or

recovery period." Cal. Lab. Code § 226.7(c) (emphasis added). Moreover, when asked at the hearing if there was any evidence that Plaintiff did not miss rest break periods and thus was not entitled to corresponding penalty payments, defense counsel responded that he was "not sure if there's any affirmative evidence of that point." (Hearing on July 12, 2024, Time Stamp 10:07:10 – 10:07:29).

Accordingly, the Court concludes Plaintiff's claims are typical of those of the Meal/Rest Period Class.

**d. Adequacy of Representation**

As an initial matter, Defendant does not challenge the adequacy of Plaintiff's counsel. The declarations provided by Plaintiff's counsel indicate that the named counsel have no prior relationship to Plaintiff and demonstrate that counsel is experienced and able to prosecute the matter vigorously on behalf of the class. (ECF No. 41-1 at 2-3; ECF No. 41-2 at 2-3; ECF No. 41-3 at 2-5; ECF No. 41-4 at 2-3; ECF No. 41-5 at 2-3). As such, the Court is satisfied that Plaintiff's counsel is adequate.

As to Plaintiff's adequacy as a class representative, Plaintiff argues that he "shares common interests with the defined classes, has claims typical of class members' claims, and is fully prepared to take all necessary steps to fairly and adequately represent the classes he represents." (ECF No. 41 at 23) (citing Plaintiff's Declaration, ECF No. 41-7 ¶¶ 6-8). Additionally, Plaintiff asserts that Plaintiff has no conflicts of interest and "will continue to adequately and vigorously prosecute this action . . . Plaintiff has agreed to abide by all of the necessary duties of a class representative." (*Id.*) (citing Plaintiff's Declaration, ECF No. 41-7 ¶¶ 9-10.

Defendant argues that Plaintiff's testimony calls into question his credibility, his understanding of the claims, and his willingness to vigorously prosecute those claims. Citing to Plaintiff's declaration, deposition testimony, and the First Amended Complaint, Defendant specifically points to the following:

- Plaintiff's testimony that he "was not concerned about anyone else's wage statements" except his own, that Plaintiff did not "understand why other people [were] being involved in this on wage statements", and that Plaintiff has not spoken with any other employees of

Defendant about wage statements, sick pay, meal or rest break premium pay, or about joining the lawsuit. (ECF No. 43 at 23).

- Plaintiff's declaration stating he received rest period premium compensation versus his subsequent testimony that he did not. (*Id.* at 23-24) (citing Plaintiff's Declaration, ECF No. 41-7 at 57, ¶ 6 ("I received meal and rest period premium compensation for missed, short, or delayed breaks."); Plaintiff's Deposition, ECF No. 43-1 at 146:8 – 147:19 ("Q: Did you ever get paid any penalty pay for a short rest break?" "A: No, ma'am.")).
- Plaintiff's incorrect statement that his sick pay claim "stems from an alleged failure to provide 'premium pay on top' of the sick pay he received." (ECF No. 43 at 24).
- Plaintiff's testimony that "[W]hen asked whether [Plaintiff] would still bring this lawsuit if he knew that [Defendant] is now paying the correct rate for meal and rest break premiums, Plaintiff answered that he wouldn't." (*Id.*).
- Plaintiff's testimony that he "had no problem with [Defendant]" and that Defendant's facility "was one of the best places that [Plaintiff] worked at." (*Id.* at 24 n. 5).

In response, Plaintiff argues that his lack of personal knowledge of other class members' experiences does not render him an inadequate representative because certification is "based on practices that apply uniformly to the putative classes" and "[m]inor differences that do not alter the applicability of those policies and practices do not preclude Plaintiff from fairly and adequately protecting the interests of the class." (ECF No. 44 at 6). Plaintiff also asserts that Defendant has "cherry-picked" portions of his testimony purportedly showing he is "indifferent" to the experiences of other class members. (*Id.*). Additionally, Plaintiff argues that his testimony about not receiving rest period compensation does not call his credibility into question because Defendant's wage statements do not distinguish between meal and rest period premiums. Therefore, Plaintiff argues, he could not have known which was indicated on his wage statements. Additionally, Plaintiff did receive non-compliant rest periods. (ECF No. 44 at 7) (citing Plaintiff's Deposition, ECF No. 44-1 at 145:14-18, 145:25 – 146:7). Lastly, Plaintiff asserts that Plaintiff has a general understanding of the case and claims, and his testimony that he would not have brought the lawsuit had he known Defendant was now paying the correct rate for meal and rest break premiums shows only that "Plaintiff would not pursue a non-existent claim." (ECF No. 44

at 8).

After consideration, the Court is satisfied that Plaintiff is an adequate representative for the Meal/Rest Period Class. As to the first inquiry under *Mego* regarding conflicts of interest, Plaintiff represents that he knows of no conflicts of interest that would impair his ability to serve as class representative, and Defendant does not contend otherwise. (Plaintiff's Declaration, ECF No. 41-7 at 3, ¶ 9). As to the second question under *Mego*, Plaintiff has also demonstrated that he will vigorously prosecute the action on behalf of the class. Although Defendant has noted some inconsistencies in Plaintiff's testimony and sworn statements, this does not establish that Plaintiff is an inadequate class representative. For example, as discussed above regarding typicality, as to Plaintiff's testimony that he did not receive rest break premiums and his declaration that he did receive those premiums, Plaintiff points out that Defendant's wage statements do not distinguish between meal and rest break premium payments. Thus, it appears the inconsistency Defendant points to may be due, at least in part, to how information was presented in the wage statements themselves.

Plaintiff's testimony also does not show that he is indifferent to the needs and experiences of other class members, as Defendant contends. For example, Defendant cites the following testimony from Plaintiff's deposition:

> Q. Okay. And if you knew that Leprino had been paying the correct rate for meal and rest break premiums since before you brought this lawsuit, would you still be bringing this lawsuit?
>
> THE WITNESS: I wouldn't. Honestly, I had no problem at Leprino. Leprino was one of the best places that I worked at. I just wasn't treated right. I – of course, any place you go, there's always got to be a person to fall back on, and, unfortunately, I was the person to fall back on.

(ECF No. 43-1 at 121:23 – 122:10) (counsel's objection omitted). Immediately preceding this testimony, Plaintiff was asked if he would still bring the lawsuit if he knew that Defendant was now paying the correct rate for sick pay. Plaintiff answered, "I don't know, honestly. It's a hard one to think about because, I mean, there's still other stuff that needs to be fixed . . . [I]t's not just that one." (*Id.* at 121:11-22). This testimony, coupled with the fact that Plaintiff is still litigating the present suit, despite his knowledge that Defendant is now paying employees the correct rate for meal and rest premiums and sick pay, demonstrates that Plaintiff is still willing to prosecute

this action.

Accordingly, the Court finds that Plaintiff and Plaintiff's counsel are adequate representatives for the Meal/Rest Period Class.

**3. Rule 23(b) Requirements**

As the Court has concluded that Plaintiff has satisfied all the requirements under Rule 23(a) for the Meal/Rest Period Class, the Court now examines the requirements under Rule 23(b).

**a. Predominance**

Plaintiff argues that the predominance requirement has been met because Defendant has uniform practices and policies raising questions that "can be completely determined from Defendant's own payroll records without the need of any individualized proof or testimony." (ECF No. 41 at 24) (citations omitted).

Defendant does not dispute that Plaintiff has satisfied the predominance requirement as to the Meal/Rest Period Class.

Plaintiff has established that during the relevant period, Defendant always paid employees meal or rest period premiums at a base hourly rate. (*See* Deposition of Jenny Robertson, ECF No. 44-1 at 63:4-19). As a uniform policy was applied to all members of the Meal/Rest Period Class, the Class is sufficiently cohesive, even if an individual member's damages will vary depending on the amount of premium pay they are owed.

Accordingly, the Court finds that predominance has been established for the Meal/Rest Period Class.

**b. Superiority**

Plaintiff argues that a class action is the superior method for resolving the claims of the Meal/Rest Period Class for several reasons. First, Plaintiff argues that because class claims are based on common policies and practices, the claims can be efficiently litigated class-wide, as opposed to requiring individual class members to file potentially thousands of individual suits. (ECF No. 41 at 24-25). Second, Plaintiff states that putative class members are hourly employees who may never bring their own actions because of their "relatively modest individual claims and limited resources" and fear of retaliation by their employer. (*Id.* at 25). Lastly, Plaintiff argues the action is manageable because Defendant's own records can be used to demonstrate liability and

measure damages.

Defendant presents no arguments against a finding of superiority as to the Meal/Rest Period Class.

The Court finds that a class action is the superior method for fairly and efficiently adjudicating the meal and rest period claims of Plaintiff and the proposed class.

In conclusion, the Court finds that Plaintiff has met his burden in satisfying the requirements of Rule 23(a) and Rule 23(b) as to the Meal/Rest Period Class. Therefore, the Court recommends that the Meal/Rest Period Class be certified.

**B. Sick Pay Class**

**1. Summary of Parties' Arguments regarding Sick Pay Class**

As an initial matter, Plaintiff contends that, "Defendant does not challenge or otherwise address the certification of the Sick Pay Class." (ECF No. 44 at 5). This is largely true, except that Defendant has challenged Plaintiff's adequacy as a class representative for each of the proposed classes. (*See* Defendant's Opposition, ECF No. 43 at 3 ("Plaintiff also seeks to certify two classes of nonexempt Lemoore West employees under the theory that years ago Leprino failed to pay those employees' meal and rest break premium pay and sick pay at their regular rate of pay. Those classes cannot be certified because, as discussed, Plaintiff is an inadequate representative."). With that in mind, the Court considers each of the Rule 23(a) and (b) requirements below as to the Sick Pay Class.

**2. Rule 23(a) Requirements**

**a. Numerosity**

Plaintiff has identified 283 individuals that fall within the proposed Sick Pay Class, which Defendant does not dispute. (ECF No. 41 at 13; *see also* Deposition of Jenny Robertson, ECF No. 41-7 at 20:14-25 – 21:1-4). This figure is sufficiently numerous that joinder of all class members is impracticable. Accordingly, the Court finds that this requirement has been met.

**b. Commonality**

Plaintiff states that the Sick Pay Class shares an "undisputed" common question regarding, "whether the methodology that Defendant utilizes to calculate sick pay wages resulted in the underpayment of the sick pay wages mandated by Labor Code section 246(*l*)(2)." (ECF No.

41 at 18). Labor Code section 246(*l*)(2) provides:

> (2) Paid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment.

Cal. Lab. Code, § 246(*l*)(1)-(2) (emphasis added).

Plaintiff states that Defendant offers sick leave benefits to non-exempt, non-union employees and has a written policy of always paying these benefits at an employee's base hourly rate instead of the regular rate of pay. This was so even during workweeks where employees received sick pay but also earned multiple hourly rates and/or non-discretionary incentive compensation, and the policy applied to all non-exempt, non-union Lemoore West employees between June 28, 2019, and May 2, 2021. (ECF No. 41 at 11). In support, Plaintiff cites to several portions of Jenny Robertson's deposition transcript. One such portion, which the Court has quoted below, contains Ms. Robertson's response to a question about Defendant's paid sick leave policy applying to non-union/non-exempt employees at Defendant's Lemoore West facility:

> Q. Okay. If you look at Section 0.1.5 entitled "Payment of Sick Time." Let me know when you have had an opportunity to review that.
>
> A. Yes.
>
> Q. So under this policy, sick time pay is compensated at the employee's hourly wage, correct?
>
> A. Correct.
>
> Q. Putting aside employees who may earn two or more hourly rates, as used in this policy, does the phrase "hourly wage" refer to an employee's base hourly rate?
>
> A. Yes, it does.

(ECF No. 41-7 at 27:16 – 28:3). Defendant does not dispute that this policy was in place during the relevant period, nor does Defendant contest that Plaintiff can establish commonality as to the Sick Pay Class. Rather, as the Court previously pointed out, Defendant contends that since 2021, it has paid sick pay wages at a different rate, but this subsequent change has no bearing on any prior underpayment of sick pay wages.

Accordingly, the Court concludes that commonality has been established for the Sick Pay Class.

\\\

**c. Typicality**

Plaintiff argues that typicality has been met as to the Sick Pay Class because he was subject to "the same common policies and practices of Defendant that resulted in the underpayment of . . . sick pay compensation." (ECF No. 41 at 23). More specifically, Plaintiff states in his declaration that, "during workweeks when I received the payment of sick page wages and non-discretionary incentive pay, Leprino paid the sick pay at my base hourly rate of pay." (ECF No. 41-7 at 2).

Defendant's opposition offers no arguments against typicality.

As Plaintiff has presented evidence that he was subject to the same policy resulting in the underpayment of sick pay wages, the Court concludes that Plaintiff's claims are typical of those of the Sick Pay Class.

**d. Adequacy of Representation**

As explained above, Defendant does not contest the adequacy of Plaintiff's counsel, and the Court is satisfied that Plaintiff's counsel is adequate for the reasons already discussed.

Defendant points to portions of Plaintiff's testimony it believes demonstrates Plaintiff's inadequacy as a representative for the Sick Pay Class. First, Defendant states that Plaintiff "incorrectly believes that [his sick pay claim] stems from an alleged failure to provide 'premium pay on top' of the sick pay he received." (ECF No. 43 at 24) (citing Plaintiff's Deposition, ECF No. 43-1 at 74:17-22; First Amended Complaint, ECF No. 31 ¶¶ 3, 18, 22, 23, 39). But Plaintiff's misunderstanding of the sick pay calculation does not render Plaintiff an inadequate representative for the Sick Pay Class. First, as Plaintiff points out, "[b]eing a class representative does not require Plaintiff to investigate or be an expert on wage and hour law." (ECF No. 44 at 8). Plaintiff need only understand the nature of the lawsuit and the claims at issue, which Plaintiff has demonstrated. Additionally, the portions of Plaintiff's First Amended Complaint cited to by Defendant do not contend that the sick pay claims stem from Defendant's failure to pay "premium pay on top" of sick pay. Rather, the First Amended Complaint states that Defendant failed to pay sick pay wages at the regular rate of pay as required under the Labor Code. *See, e.g.*, First Amended Complaint, ECF No. 31 at 2 ¶ 3 ("Defendants . . . have acted intentionally and with deliberate indifference and conscious disregard to the rights of all employees by . . . failing

to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay sick pay wages, in violation of Labor Code sections 201-204 and 246."). These allegations mirror language in Labor Code section 246. *See* Cal. Lab. Code § 246(*l*)(1) ("Paid sick time for nonexempt employees shall be calculated in the same manner as the *regular rate of pay* for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek.") (emphasis added). Thus, even if Plaintiff's testimony suggests he was confused about how sick pay wages were calculated, the operative complaint in this case tracks the language of the appropriate statute.

Defendant also points to testimony that Plaintiff did not know if he would have brought the lawsuit if he had known that since 2021, Defendant has been calculating sick pay at the regular rate of pay. As previously discussed by the Court and as Plaintiff points out, when answering this same question, Plaintiff also testified, "I mean, there's still other stuff that needs to be fixed . . . [I]t's not just that one." (Plaintiff's Deposition, ECF No. 44-1 at 121:11-22; *see also* Plaintiff's Reply, ECF No. 44 at 8). Again, Plaintiff has proceeded with litigating this action despite now knowing Defendant has calculated employee sick pay at the correct rate since 2021.

Lastly, Defendant states that Plaintiff testified that he has not communicated with any of Defendant's employees about sick pay, but Defendant fails to demonstrate how this fact renders Plaintiff an inadequate representative for the Sick Pay Class.

Accordingly, the Court finds that Plaintiff and Plaintiff's counsel are adequate representatives for the Sick Pay Class.

**2. Rule 23(b) Requirements**

**a. Predominance**

As with the Meal/Rest Period Class, Plaintiff argues that predominance is satisfied for the Sick Pay Class because Defendant's standardized policy resulted in employees being underpaid sick pay wages, and this claim can be determined from Defendant's own records.

Defendant does not offer any arguments disputing that Plaintiff has satisfied the predominance requirement as to the Sick Pay Class.

The Court finds that predominance has been satisfied for the Sick Pay Class. Plaintiff has established that during the relevant period, Defendant always paid employees sick pay wages at a

base hourly rate. (*See, e.g.*, Deposition of Jenny Robertson, ECF No. 41-7 at 27:16 – 28:3, 30:12-17). As a uniform policy was applied to all members of the Meal/Rest Period Class, the Class is sufficiently cohesive.

Accordingly, the Court concludes that predominance has been satisfied for the Sick Pay Class.

**b. Superiority**

As with the Meal/Rest Period Class, Plaintiff argues that a class action is the superior method for resolving the claims of the Sick Pay Class because the claims are based on Defendant's common policy, thus favoring class-wide litigation as opposed to potentially thousands of individual claims. Additionally, Plaintiff argues that individual employees may not bring their own claims because the claims are relatively modest, the employees have limited resources, and the employees may fear retaliation.

Defendant presents no arguments against a finding of superiority as to the Sick Pay Class.

Thus, the Court finds that a class action is the superior method for fairly and efficiently adjudicating the sick pay claims of Plaintiff and the proposed class.

In conclusion, the Court finds that Plaintiff has met his burden in satisfying the requirements of Rule 23(a) and Rule 23(b) as to the Sick Pay Class. Therefore, the Court recommends that the Sick Pay Class be certified.

**C. Wage Statement Class**

**1. Summary of Parties' Arguments regarding Wage Statement Class**

As to the wage statement class, Plaintiff argues that commonality is established because the "narrow legal question" shared by all proposed class members is "whether Defendant's wage statements fail to display the total hours worked, in violation of [Labor Code] Section 226(a)(2)." (*Id.* at 21-22). Plaintiff also argues his wage statement claim is typical of the class because "the wage statements issued to Plaintiff failed to identify the total hours worked and the shift differential rate." (*Id.* at 23). Plaintiff further argues that he is an adequate class representative, and that class counsel is competent and experienced to prosecute the class claims in this action. (*Id.* at 23-24). Lastly, Plaintiff argues that the Rule 23(b) requirements have been met for the same reasons they were met for the Meal/Rest Period and Sick Pay Classes, except as to

predominance, Plaintiff argues that the reason common issues predominate over individualized issues is because all employees "received the same defective wage statements." (*Id.* at 24).

In opposition, Defendant primarily challenges the merits of the wage statement claim, arguing that Plaintiff has not offered evidence of any illegal conduct under Labor Code section 226(a)(2). Defendant also argues commonality and predominance cannot be met because of multiple questions requiring individualized inquiries of the putative class members, including whether each putative class member reviewed their wage statements, how—considering their unique situation and circumstances—each putative class member would interpret the meaning of terms such as "Shift Diff. .35" and whether they could calculate their total hours worked, and whether each putative class member is represented by a union. (*Id.* at 17-19). In support, Defendant offers 50 declarations from its employees regarding their own understanding of the wage statements. Additionally, Defendant asserts that differences in how its California facilities formatted their wage statements and paid their employees would make class-wide adjudication impracticable, and liability would depend on Defendant's knowledge at the time it issued each wage statement. Lastly, Defendant argues that Plaintiff is an inadequate class representative because Plaintiff has provided conflicting testimony that calls into question his credibility, understanding of the claims at issue, and his willingness to prosecute this action.

In reply, Plaintiff argues that class certification is proper because the wage statements Defendant issues across its California facilities uniformly omitted an employee's total hours worked and listed "redundant" hours, thus raising the class-wide question of whether an employee could easily determine their total hours worked. (ECF No. 44 at 10-11). According to Plaintiff, the predominance factor is met because the "the lawfulness of [Defendant's] practice of presenting redundant overtime and/or shift differential hours worked on its wage statements . . . presents a common predominating question of law determinative of liability." (*Id.* at 12) (citation omitted). Plaintiff also asserts that Defendant's arguments regarding the lawfulness of its wage statements improperly reach the merits, and injury under section 226(e) is determined using an objective reasonable person standard and does not require an individualized showing of harm. Lastly, Plaintiff contends that he is an adequate class representative, and argues that the Court should not consider the employee declarations submitted in support of Defendant's opposition.

**1. Rule 23(a) Requirements**

**a. Numerosity**

Plaintiff has identified 1,998 individuals that fall within the proposed Wage Statement Class. (ECF No. 41 at 13; *see also* Deposition of Jenny Robertson, ECF No. 41-7 at 21:20-25 – 22:1-6). Defendant does not dispute this figure. This figure is sufficiently numerous that joinder of all class members is impracticable.

Accordingly, the Court finds that this requirement has been met.

**b. Commonality**

Plaintiff contends that the common question to be answered among the Wage Statement Class is "whether Defendant's wage statements fail to display the total hours worked, in violation of Section 226(a)(2)." (ECF No. 41 at 21-22). Section 226(a)(2) provides:

> (a) An employer, semimonthly or at the time of each payment of wages, shall furnish to their employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) *total hours worked by the employee*, except as provided in subdivision (j).[7]

(emphasis added) Plaintiff contends that "section 226(a)(2) has been interpreted by courts and the California Division of Labor Standards Enforcement . . . to mean that an employer is required to specify 'the precise, actual number of hours worked.'" (ECF No. 41 at 19)

In support of commonality, Plaintiff argues that all wage statements for all class members suffer from the same defect in failing to reflect the total hours worked. During the period in question, the wage statements were all prepared in the same manner for all Wage Statement Class Members, with one main exception, described below. Wage statements for employees at the Lemoore West facility split an employee's overtime hours into "Overtime 1.0" and "Overtime Premium" despite both constituting the same hours of work. (*See* ECF No. 43 at 11) ("'Overtime Premium' reflects the premium payment for working 'Overtime 1.0' hours, and hours at that rate constitute the same 'hours of work' as 'Overtime 1.0' hours.") (citations omitted). Additionally, all wage statements list an employee's shift differential hours, which are not actually separate hours worked but "a premium payment employees receive for working designated hours." (ECF

[7] Neither party contends that any of the exceptions outlined in subsection (j) are applicable here.

No. 41 at 11) (citation omitted). The omission of "total hours worked" was a common policy during the period, as shown by the fact that Defendant changed its policy for presenting total hours in wage statements shortly after the filing of this lawsuit and currently does include "total hours worked" on all wage statements. (*See* ECF No. 43 at 14) ("[S]ince 2024, Leprino wage statements include header that says 'Total Hours Worked[.]'") (some internal quotation marks omitted). As a result, Plaintiff contends that Defendant's wage statements "do not allow for the total hours worked to be determined by adding all of the hours listed on the document." (ECF No. 41 at 21). Plaintiff thus contends that there is a common legal question as to whether this presentation of hours on the Wage Statement Class Members' wage statements complies with the Labor Code's requirement that all wage statements show the "total hours worked by the employee." (Cal. Lab. Code § 226(a)(2)).

As to the exception noted above, both parties agree that wage statements prepared for employees at Defendant's Lemoore East and Tracy facilities did not split overtime hours into two categories. (*See* ECF No. 43 at 11; ECF No. 44 at 10-12)[8] (citations omitted). However, none of the wage statements issued to employees across any of Defendant's California facilities listed "total hours worked," which Plaintiff claims renders them violative of the Labor Code. Thus, while the wage statements across facilities were somewhat different, the legal question is the same—whether the wage statements display "total hours worked" as required by the Labor Code where the statements present hours in categories, such as overtime and shift differentials, which must be added up to determine an employee's total hours worked.

Defendant's opposition does not dispute any of these facts. Although Defendant argues that its wage statements differ across its California facilities and among employees, Defendant concedes that all wage statements listed shift differentials, lacked a "total hours worked" notation, and "largely" follow the same format. (*See id.* at 4-5 (Defendant's opposition explaining that Lemoore West statements split overtime hours, employees at Lemoore East and Tracy "received several different types of shift differentials[9] at different hourly rates," all wage statements at times

[8] Although Plaintiff points out that Jenny Robertson, Defendant's PMQ, testified that wage statements issued to *all* non-exempt employees share a common format, Plaintiff does not dispute that the presentation of overtime hours differed in the wage statements issued to employees at Lemoore East and Tracy. (*See* ECF No. 44 at 10) (citations omitted).

[9] As cited by Plaintiff, Jenny Robertson testified that since June 28, 2021, there have been no

contained or omitted other categories under the "earnings" column, and employees received different pay rates depending on collective bargaining agreement or company policy); *see also id.* at 4 ("Since June 28, 2021, the wage statements at Lemoore West, Lemoore East, and Tracy have largely followed the same format.")). Further, Defendant does not dispute that Plaintiff himself received wage statements presented in the format challenged by Plaintiff. (*See id.* at 16) ("Nor did [Plaintiff] ever ask anyone to clarify shift-differential or overtime hours on his wage statements before filing this lawsuit.") (citation omitted).

Instead, Defendant raises two main arguments: first, that the wage statements complied with the Labor Code for various reasons, and second, that liability must be determined on an individual basis. As to the first, Defendant argues Plaintiff has not identified any illegal conduct that caused class-wide injury because the wage statements can be used to determine the total hours worked, because Defendant did not act knowingly and intentionally to violate the Labor Code, and because there can be no injury unless "a reasonable person in any class member's situation" would be unable to readily ascertain total hours worked solely from a particular wage statement. (*Id.* at 16)[10] As to the second argument, while Defendant concedes that liability turns on what a reasonable person would know, Defendant argues nevertheless that liability will depend on specific facts and understanding of each employee.

The Court agrees with Plaintiff that Defendant's liability under the Labor Code can be determined on a class-wide basis. The key inquiry is whether the wage statements comply with section 226(a)'s requirement to provide, "an accurate itemized statement in writing showing . . . total hours worked by the employee." Cal. Lab. Code, § 226(a)(2). While Defendant puts forth numerous arguments why the presentation of the hours complied with the Labor Code, these arguments do not defeat class certification. None of the wage statements contained a notation for "total hours worked," instead including columns for "earnings, hourly rate, and hours," that had to be understood and calculated to determine total hours worked. (*See* ECF No. 43 at 4; *see also*

modifications to the display of shift differential hours or the presentation of shift differential rates. (*See* ECF No. 44 at 10 n.5) (citing Deposition of Jenny Robertson, ECF No. 44-1 at 38:21 – 39:8).

[10] Under the Labor Code, a wage statement claim requires three elements: "(1) a violation of the statute; (2) the violation was knowing and intentional; and (3) an injury resulted from the violation." *Allchin v. Volume Services, Inc.*, No. 3:16-CV-00488-H-KSC, 2017 WL 3337141, at *7 (S.D. Cal. Aug. 4, 2017) (quoting *Achal v. Gate Gourmet, Inc.*, 114 F.Supp.3d 781, 810 (N.D. Cal. 2015)).

*id.* at 11 ("Neither Party disputes . . . that Lemoore West employees could have calculated total hours worked simply by adding 'Regular' hours and 'Overtime 1.0' hours . . . . And Lemoore East and Tracy employees could have done so by adding 'Regular' hours and 'Overtime' hours.") (citations omitted)). Given this uniformity among all the wage statements, whether they complied with the Labor Code can be determined on a class-wide basis.

The Court must consider the merits "if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d at 981 (citations omitted). But this consideration does not require the Court to determine if Defendant's wage statements in fact violated the Labor Code. *See Stockwell v. City and County of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) ("[D]emonstrating commonality does not require proof that the putative class will prevail on whatever common question it identifies."). Instead, the question for class certification is whether these legal issues can be determined on a class-wide basis. Accordingly, the Court declines to examine each of Defendant's arguments as to the elements of a wage statement claim under section 226(a)(2), as these arguments necessarily reach the merits.

Moreover, as discussed above, although wage statements at the Lemoore East and Tracy facilities did not split overtime in the same way those at the Lemoore West facility did, and employees at Lemoore East and Tracy received "several different types of shift differentials at different rates," the format of all statements was otherwise the same. (ECF No. 43 at 4). *See Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020) (in discussing claim for the improper calculation of overtime wages, concluding, "Although there are differences between the two policy periods, a common question remains regarding the lawfulness of BOA's using total hours worked in the divisor. It is true that BOA may have used different inputs, and the policies may have applied differently because of different employees' various fact situations during two different time periods. But a common legal question exists central to determining liability."). Accordingly, the legal question of whether Defendant's statements complied with the Labor Code is common because none of the wage statements allowed employees to add up all hours on the statement to determine "total hours worked," which is what Plaintiff claims violated the Labor Code. Indeed, Defendant concedes "Leprino's wage statements accurately showed total hours worked – *even though adding up all the hours on the document would not have equaled total*

*hours worked*." (ECF No. 43 at 5-6, 11) (emphasis added, citations omitted).

Moreover, both parties agree that an "injury" within the meaning of section 226 is determined by an objective, reasonable person standard, rather than an individualized subjective standard. Section 226(e) provides, in relevant part:

> (B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:
>
> (i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2[11]) to (4), inclusive, (6), and (9) of subdivision (a).
>
> . . . .
>
> (C) For purposes of this paragraph, "promptly and easily determine" means a *reasonable person* would be able to readily ascertain the information without reference to other documents or information.

Cal. Lab. Code, § 226(e)(2)(B)-(i), (C). Although evidence about what individual employees understood about the wage statements might be relevant to this inquiry, it is nevertheless a question that can be answered on a class-wide basis.

Whether Defendant's wage statements violated section 226(a) is a common contention capable of class-wide resolution where all wage statements did not list an employee's total hours worked.

Accordingly, the Court concludes that commonality has been satisfied as to the Wage Statement Class.

**c. Typicality**

Plaintiff next argues that typicality has been met as to the Wage Statement Class because "Plaintiff seeks recovery based upon the same legal theories and factual circumstances as the proposed" Wage Statement Class, and "the wage statements issued to Plaintiff failed to identify the total hours worked and the shift differential rate." (ECF No. 41 at 22) (citing Plaintiff's Declaration, ECF No. 41-7 ¶ 8). In response, Defendant contends that Plaintiff did not review his

---

[11] Section 226(a)(2) is the section at issue in the wage statement claim, concerning "total hours worked by the employee." Cal. Lab. Code, § 226(a)(2).

wage statements during his employment, was not confused by them, and did not ask for clarification or try to determine his total hours worked. (*See* Defendant's Opposition, ECF No. 43 at 12) (citing to portions of Plaintiff's deposition testimony discussing his wage statements, such as where Plaintiff testified that he did not look at his wage statements to determine total hours worked while employed by Defendant and was not confused). However, Plaintiff has presented evidence that he *did* review his wage statements and could not determine his total hours. For example, Plaintiff testified as follows:

> Q. Okay. Can you tell me what the claims are that you're making in that case, to your understanding?
>
> A. Yes. Well, not – for the wage statements, I can't read the total hours on the wage statement. And then for my meals, my breaks, my lunch, sick time, I wasn't getting paid my premium. I as getting paid my base hours on that.
>
> Q. And in your – strike that. Why do you say you can't read the total hours on your wage statements?
>
> A. Well, it doesn't say a total hours on it. And when I read it, it says, you know, 40 hours, you know, worked, and says your overtime, and then it says your – you have your sick time and stuff like that, but it doesn't show a total hours worked. I can't understand it.

(ECF No. 44-1 at 32:3-19); (*see also id.* at 61:3-5) (Q: "[D]uring your employment with Leprino, did you ever look at your wage statements?" A: "Yes. There was times I looked at them.").

Accordingly, the Court concludes that Plaintiff's claims are typical of those of the Wage Statement Class.

**d. Adequacy of Representation**

As explained above, Defendant does not contest the adequacy of Plaintiff's counsel, and the Court is satisfied that Plaintiff's counsel is adequate for the reasons already discussed.

Defendant contends that Plaintiff is an inadequate representative for the same reasons discussed as to the Meal/Rest Period and Sick Pay Classes. Specific to the wage statement claim, however, Defendant points to Plaintiff's testimony that Plaintiff "was not concerned about anyone else's wage statements" except his own, that Plaintiff did not "understand why other people [were] being involved in this on wage statements", and that Plaintiff has not spoken with any other employees of Defendant about wage statements. (ECF No. 43 at 23). In response, Plaintiff argues that his testimony was only reiterating that Plaintiff did not have personal knowledge

about wage statements issued to others, and that he was confused as to the relevance of counsel's request to provide the names of individuals he saw looking at their wage statements.

The Court does not believe these statements show that Plaintiff is an inadequate representative. Rather, the Court finds that Plaintiff has demonstrated he is an adequate representative because there are no apparent conflicts of interest and because Plaintiff has actively prosecuted this case on behalf of the class. *See Mego*, 213 F.3d at 462 (resolution of adequacy requires addressing conflicts of interest with other class members and whether representative will vigorously prosecute case).

Accordingly, the Court concludes that Plaintiff and Plaintiff's counsel are adequate representatives for the Wage Statement Class.

**2. Rule 23(b) Requirements**

**a. Predominance**

Plaintiff argues that predominance has been established because "[a]ll employees . . . received the same defective wage statements," and any questions, "can be completely determined from Defendant's own payroll records without the need of any individualized proof or testimony." (ECF No. 41 at 24) (citations omitted). Defendant argues that individualized issues predominate over common questions, precluding certification. Specifically, Defendant argues liability will depend (1) on the state of information known to Defendant throughout the class period; (2) whether each employee viewed their wage statements; and (3) individual class members' circumstances such as wage, shift and union status, which facility they worked at (and correspondingly, whether their wage statement split overtime), and their knowledge about the wage statements, to determine how the "reasonable person" standard under Labor Code section 226(e)(2)(C) applies. In response, Plaintiff argues that injury is analyzed under an objective standard that need not be decided at class certification.

Again, the Court finds that common issues predominate because injury is determined on an objective basis, based on whether a reasonable person would be unable to "promptly and easily determine" total hours worked from their wage statement. Cal. Lab. Code, § 226(e)(2)(B). *See Stafford v. Brink's, Inc.*, Case No. CV-14-01352-MWF (PLAx), 2015 WL 12699458, at *15 (C.D. Cal. 2015) ("[T]he standard to establish 'injury' under section 226(e) is whether '***a***

***reasonable person*** would be able to readily ascertain the information without reference to other documents or information,' and not whether ***the plaintiff or each putative class member*** would be able to readily ascertain the information without reference to other documents or information.") (citation omitted, emphasis in original); *Brewer v. General Nutrition Corporation*, No. 11-CV-3587 YGR, 2014 WL 5877695, at *5 (N.D. Cal. 2014) ("Because the wage statements are uniform across the class with respect to these alleged violations of [Labor Code section 226], and proof of injury is based upon what a 'reasonable person' would understand from the face of those wage statements, the issues of fact and law to be determined on these claims are both common and predominant."); *see also Lubin v. The Wackenhut Corp.*, 5 Cal.App.5th 926, 959 (2016) ("Labor Code section 226, subdivision (e)(2)(B)(i) clarifies that injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect.").

In support of its argument, Defendant cites to *Castillo v. Bank of America, NA*, a Ninth Circuit case, for the principle that "without evidence tending to show that [a] practice uniformly led to 'harm in every instance to all employees,' predominance is not met." (ECF No. 43 at 18) (quoting *Castillo*, 980 F.3d 723, 731 (9th Cir. 2020). But *Castillo* does not set such a broad precedent. *Castillo* concerned an appeal of a denial for class certification for claims regarding an alleged improper calculation of overtime wages. As to predominance, the Ninth Circuit agreed with the defendant that predominance was lacking where "employees who did not work overtime or did not earn a bonus . . . can have no claim for compensation based on an erroneous method of overtime-rate calculation." *Castillo*, 980 F.3d at 731 ("[T]he use of the method to calculate overtime wages is not evidence of harm in every instance to all employees, for those who did not work overtime or receive a bonus in the same period, as well as those who were overpaid for it have no actual injury and hence have no claim."). Here, in contrast, all class-members received the wage statements that Plaintiff claims violated the Labor Code.

Accordingly, the Court finds that predominance has been established for the Wage Statement Class.

**b. Superiority**

As with the Meal/Rest Period and Sick Pay Classes, Plaintiff argues that a class action is

the superior method for resolving the claims of the Wage Statement Class because the claims are based on Defendant's common policy, thus favoring class-wide litigation as opposed to potentially thousands of individual claims. Additionally, Plaintiff argues that individual employees may not bring their own claims because the claims are relatively modest, the employees have limited resources, and the employees may fear retaliation.

In opposition, Defendant argues that "the question of whether Leprino acted knowingly and intentionally 'is sufficiently complex such that predominance and manageability as a class' cannot be satisfied." (ECF No. 43 at 22). Specifically, Defendant contends that this determination "requires an inquiry into Leprino's knowledge at the time it issued each alleged unlawful wage statement to each individual employee," posing serious management issues. (*Id.* at 21) (citing *Myford*, 2018 WL 3646895, at *3).

The Court disagrees. Except as to overtime hours, the wage statements at issue were produced in the same format under the same policy. Thus, Defendant's state of mind as to forming that policy will be the same for the whole class. Although Defendant states that employees provided feedback as to the wage statements, Defendants cite no evidence indicating it made separate intentional decisions how to reflect hours on the statements for each and every wage statement and, given the uniformity of presentation of hours in each statement, it is not plausible that it did so. (*See, e.g.*, Lisa Prater's Declaration, ECF No. 43-2, at 2 ("Leprino and the Teamsters [union] have bargained over shift differential pay, hours worked, and what must appear on a nonexempt employee's wage statement.")).

Thus, when considering the relevant factors, the Court finds that a class action is the superior method for fairly and efficiently adjudicating the wage statement claims of Plaintiff and the proposed class.

In conclusion, the Court has found that Plaintiff has met his burden in satisfying the requirements of Rule 23(a) and Rule 23(b) as to the Wage Statement Class. Therefore, the Court recommends that the Wage Statement Class be certified.

\\\

\\\

\\\

## V. CONCLUSION, ORDER, AND RECOMMENDATION

Based on the foregoing, IT IS ORDERED that:

Defendant's request for leave to file a sur-reply in opposition to Plaintiff's reply to motion for class certification (ECF No. 45) is DENIED.

Further, IT IS RECOMMENDED that:

1. Plaintiff's motion for class certification (ECF No. 41) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within thirty (30) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 23, 2025**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE