Larry W. Lee (State Bar No. 228175)
Kristen M. Agnew (State Bar No. 247656)
Max W. Gavron (State Bar No. 291697)
Kwanporn "Mai" Tulyathan (State Bar No. 316704)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile
lwlee@diversitylaw.com
kagnew@diversitylaw.com
mgavron@diversitylaw.com
ktulyathan@diversitylaw.com

William L. Marder (State Bar No. 170131)
bill@polarislawgroup.com
**POLARIS LAW GROUP**
501 San Benito Street, Suite 200
Hollister, CA 95023
(831) 531-4214
(831) 634-0333 facsimile

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DOMINGUEZ, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LEPRINO FOODS COMPANY, a Colorado corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:22-cv-01018-KES-EPG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   May 30, 2025<br>Time:   10:00 a.m.<br>Courtroom: 10, 6th Floor<br>Judge:  Erica P. Grosjean |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10 of the United States District Court for the Eastern District of California, Sacramento Division, located at 2500 Tulare Street, Fresno, CA 93721, before the Honorable Erica P. Grosjean, Plaintiff Christopher Dominguez ("Plaintiff") will and hereby does move the Court for preliminary approval of the proposed Joint Stipulation of Class Action Settlement ("Settlement Agreement" or "Agreement") entered into by Plaintiff and Defendant Leprino Foods Company ("Defendant") (Plaintiff and Defendant shall collectively be referred to as the "Parties"). Specifically, Plaintiff respectfully requests that the Court:

1. Grant certification of the proposed Class, for settlement purposes only, comprised of all current and former non-exempt employees of Leprino in the State of California who received the payment of overtime and/or shift differential wages, at any time from Oct 17, 2023 to February 24, 2024;

2. Authorize the mailing of the proposed Notice of Proposed Class Action Settlement ("Notice Packet");

3. Appoint Plaintiff as the Class Representative, and Larry W. Lee, Kristen M. Agnew, Max Gavron and Kwanporn "Mai" Tulyathan of Diversity Law Group, P.C., and William L. Marder of Polaris Law Group as Class Counsel;

4. Preliminarily approve the Agreement and the Gross Settlement Amount in the amount of Two Hundred Twenty Thousand Dollars ($220,000.00);

5. Find on a preliminary basis that the Agreement appears to be within the range of reasonableness of a settlement, including the amount of the Enhancement Payment to Plaintiff, Settlement Administration Costs, Class Counsel Award, and the allocation of payments to Class Members, that could ultimately be given final approval by this Court;

6. Appoint Phoenix Settlement Administrators as the Settlement Administrator; and

7. Schedule the matter for a Final Fairness and Final Approval hearing.
Plaintiff makes this unopposed Motion on the grounds that the proposed Settlement is

within the range of possible final approval, and notice should, therefore, be provided to the Class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the attached Memorandum of Points and Authorities, the Declarations of Larry W. Lee, Kristen M. Agnew, Max Gavron and Kwanporn "Mai" Tulyathan of Diversity Law Group, P.C., William L. Marder, Christopher Dominguez and Jodey Lawrence of Phoenix Settlement Administrators, the Joint Stipulation of Class Action Settlement, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


DATED: April 24, 2025                    DIVERSITY LAW GROUP


                                          By:  _/s/ Kristen M. Agnew_____
                                                    Kristen M. Agnew
                                              Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION…………………………………………………………………**11**

II.  PROCEDURAL HISTORY ..................................................................................... **12**

   A.   The Original Complaint. ................................................................................ **12**

   B.   The First Amended Complaint. ...................................................................... **12**

   C.   The Parties Engaged in Discovery Concerning Defendant's Wage Statement Policies and Practices.................................................................................................. **13**

   D.   The Parties Participate in Private Mediation.................................................. **13**

   E.   The Class Certification Motion...................................................................... **13**

   F.   The Parties Resume Settlement Negotiations. ............................................... **13**

   G.   The Operative Second Amended Complaint. ................................................ **14**

III. SUMMARY OF THE PROPOSED SETTLEMENT ............................................ **14**

   A.   The Class. ...................................................................................................... **14**

   B.   The Gross Settlement Amount. ...................................................................... **15**

   C.   The Enhancement Payment. ........................................................................... **15**

   D.   Settlement Administration Costs.................................................................... **15**

   E.   Attorneys' Fees and Costs. ............................................................................ **16**

   F.   Payments to Settlement Class Members. ....................................................... **16**

   G.   Scope of Release. .......................................................................................... **17**

   H.   Proposed Implementation Schedule.............................................................. **17**

IV. PROVISIONAL AND CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE……………………………………………………………… **17**

   A.   The Settlement Class Satisfies FRCP 23(a) and (b)...................................... **18**

      1.   Rule 23(a)(1) – Numerosity. ................................................................ **18**

      2.   Rule 23(a)(2) – Commonality............................................................... **18**

      3.   Rule 23(a)(3) – Typicality. ................................................................... **18**

      4.   Rule 23(a)(4) – Adequacy. ................................................................... **19**

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

B.    Common Issues Predominate and Class-wide Treatment is Superior.......................19

V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED.............20

A.    Legal Standards for Preliminary Approval of Class Action Settlements..................20

B.    The Settlement Is Not the Result of Fraud or Collusion. ...........................................21

C.    The Settlement Is a Fair Compromise Given the Risks and Uncertainties Presented by Continued Litigation. ....................................................................................................22

D.    The Gross Settlement Amount Represents 14.54% of the Maximum Penalties at Issue....................................................................................................................................24

E.    The Court Should Order Dissemination of the Notice. ...............................................25

1.    The Class Notice is Accurate and Informative.....................................................25

2.    The Class Notice Satisfies Due Process. ............................................................26

F.    The Settlement Administrator's Fees are Reasonable. ..............................................26

G.    The Enhancement Payment to Plaintiff is Reasonable...............................................26

H.    Class Counsel's Attorneys' Fees and Costs are Reasonable, Fair, and Appropriate……………………………………………………………………………….28

VI.  CONCLUSION………………………………...............................................................29

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**State Cases**

*Castellanos v. Pepsi Bottling Group, Inc.,* No. RG07332684 (Alameda Cnty. Super. Ct., March 11, 2010) ........................................................................................... 28

*Early v. Superior Court,* 79 Cal. App. 4th 1420, 1427 (2000) ..................................... 29

*In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th at 1394-95 (2010)................ 28

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26-30 (2000) ....................... 29

*Lubin v. The Wackenhut Corp*., 5 Cal. App. 5th 926, 959 (2016) ................................. 19

*Maria P. v. Riles*, 43 Cal. 3d 1281, 1290-91 (1987)................................................ 29

*Naranjo v. Spectrum Security Services, Inc*., 15 Cal. 5th 1056 (2024) ......................... 24

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009)................... 22, 28

*Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977) ........................................................ 29

*Trotsky v. Los Angeles Fed. Sav. & Loan*, 48 Cal.App.3d 139, 152 and fn. 13 (1975)........ 26

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th at 254 (2001) ................................ 29

*Westside Cmty. For Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 352-53 (1983) ............ 29

**Federal Cases**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ....................................... 21

*Apodaca v. Costco Wholesale Corp.*, 2014 WL 2533427 (C.D. Cal. June 5, 2014) ........... 24, 25

*Arroyo v. Int'l Paper Co.*, 611 F. Supp. 3d 824, 841-43 (N.D. Cal. 2020)....................... 24

*Bellinghausen v. Tractor Supply Co*., No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ............................................................................ 25

*Birch v. Office Depot, Inc*. (S.D. Cal. Sept. 28, 2007)  Case No. 06cv1690 DMS...................... 30

*Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984) .................................................. 29

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)......................................... 27, 29

*Bond v. Ferguson Enterprises, Inc*., No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ............................................................................ 28

*Boyd v. Bank of America Corp.*, 300 F.R.D. 431, 440-44 (2014)............................................ 19, 30

*Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009) .......... 22

*Churchill Village v. General Electric*, 361 F.3d at 576 (9th Cir. 2004) ........................................ 22

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................ 21, 22

*Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832
(N.D. Cal. Apr. 22, 2010) ........................................................................................................ 28

*Greko v. Diesel U.S.A., Inc*., No. 10–cv–02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26,
2013) ...................................................................................................................................... 26

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ..................................... passim

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988)..................................... 19

*In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) .......................... 23

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) ................................. 25, 28

*In re NJOY Consumer Class Action Litigation,* 120 F. Supp. 3d 1050, 1091 (C.D. Cal. 2015)... 19

*In re Pac. Enters. Securities Litig.,* 47 F.3d 373, 378 (9th Cir. 1995)........................................... 22

*In re Paine Webber Ltd. P'ships Litig*., 171 F.R.D. 104, 125 (S.D.N.Y. 1997)........................... 23

*Louie v. Kaiser Found. Health Plan, Inc*., No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS
78314........................................................................................................................................ 28

*Magadia v. Wal-Mart Associates, Inc*., 2018 WL 339139 (N.D. Cal. 2018 ................................ 19

*Martin v. FedEx Ground Package Sys., Inc.* (N.D. Cal. Decl. 31, 2008) No. C 06-6883 VRW,
2008 WL 5478576 ................................................................................................................... 30

*Mex. Workers v. Ariz. Citrus Growers,* 904 F. 2d 1301, 1311 (9th Cir. 2002)............................. 29

*Quezada v. Con-Way Freight, Inc.* (N.D. Cal. Jan. 15, 2015)  No. 09-cv-3670......................... 30

*Rieve v. Coventry Healthcare Inc.* (C.D. Cal. Aug. 8, 2014)  No. 11-cv-1032-DOC ................. 30

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009)..................................... 22

*Singer v. Becton Dickinson and Co.* (S.D. Cal. Jun. 1, 2010)  No. 08-CV-821-IEG (BLM) 2010
WL 2196104 ............................................................................................................................ 30

*Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016)................................ 21, 22, 27

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

*Stafford v. Brink's, Inc.*, 2015 WL 12699458 (C.D. Cal., 2015) ................................. 19

*Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003) ........................................ 27

*Stuart v. Radioshack Corp.* (N.D. Cal. Aug. 9, 2010) No. C-07-4499 EMC, at *5-*7, 2010 WL 3155645.................................................................................................. 30

*Van Ba Ma v. Covidien Holding Inc.*, U.S. Dist. Ct. Case No. 8:12-cv-02161 (C.D. Cal. 2014) 25

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).......................... 28

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010)..................... 28, 30

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)........................................................................................ 25

*Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987)................................. 20

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558 . 28

*Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1127 (N.D. Cal., 2014)..................................... 19

*Wren v. RGIS Inventory Specialties,* 2011 U.S. Dist. Lexis 38667, at *19 (N.D. Cal April 1, 2011) ................................................................................................... 22, 30

**Statutes**

California Civil Code § 1542 ............................................................................. 16, 18, 28

Labor Code section 1174 ............................................................................................ 15

Labor Code section 1194 ..................................................................................... 13, 15

Labor Code section 1194.2 ......................................................................................... 15

Labor Code section 1197.1 ......................................................................................... 15

Labor Code section 1198 ............................................................................................ 15

Labor Code section 210 .............................................................................................. 15

Labor Code section 218 .............................................................................................. 15

Labor Code section 218.5 ........................................................................................... 15

Labor Code section 218.6 ........................................................................................... 15

Labor Code section 225.5 ........................................................................................... 15

Labor Code section 226 .................................................................... 13, 15

Labor Code section 226(a) ............................................................... 15, 24

Labor Code section 226(a)(6) ............................................................... 12

Labor Code section 226.3 ...................................................................... 15

Labor Code section 226.6 ...................................................................... 15

Labor Code section 226.7 ................................................................ 13, 15

Labor Code section 246 .......................................................................... 13

Labor Code section 2699 ........................................................................ 15

Labor Code section 2699(g) ................................................................... 29

Labor Code section 510 .................................................................... 13, 15

Labor Code section 512 .................................................................... 13, 15

Labor Code section 558 .................................................................... 13, 15

Labor Code sections 201-203 ................................................................ 13

Labor Code sections 201-204 ........................................................... 13, 15

**Other Authorities**

3 *Newberg on Class Actions*, *supra*, at § 8:32 .................................... 26

4 *Newberg on Class Actions*, *supra*, at § 11.25 .................................. 21

*Newberg on Class Actions*, *supra*, at § 14:6 ...................................... 29

**Rules**

Fed. R. Civ. P 23 ..................................................................................... 18

Fed. R. Civ. P. 23(a) ...................................................................... 18, 19, 21

Fed. R. Civ. P 23(a)(4) ........................................................................... 20

Fed. R. Civ. P. 23(a) and (b) .................................................................. 18

Fed. R. Civ. P. 23(b)(3) ........................................................................... 21

Fed. R. Civ. P 23(c)(2)(B) ............................................................... 26, 27

Fed. R. Civ. P. 23(e)(1) ........................................................................... 27

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION
SETTLEMENT

Fed. R. Civ. P 23(e) ............................................................................................ 26

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 19

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

**I.     <u>INTRODUCTION</u>**

This class action is brought on behalf of all current and former non-exempt employees of Defendant Leprino Foods Company ("Defendant" or "Leprino") in the State of California who received the payment of overtime and/or shift differential wages, at any time from Oct 17, 2023 to February 24, 2024. Plaintiff Christopher Dominguez ("Plaintiff") alleges that Leprino's wage statements omitted the total hours worked, in violation of Labor Code section 226(a)(2).

Following extensive discovery, motion practice, and months of arms' length negotiations, Plaintiff and Leprino (collectively, the "Parties") entered the Joint Stipulation of Class Action Settlement ("Agreement," "Settlement" or "SA").[1] As demonstrated below and in the accompanying declaration of Kristen M. Agnew, the proposed Settlement embodies all of the features of a settlement that is fair, reasonable, adequate, and in the best interest of Class Members. Significantly, the <u>entire Gross Settlement Amount</u> is non-reversionary, such that no monies will revert to Defendant. After deducting the proposed Enhancement Payment to Plaintiff, Settlement Administration Costs, and Class Counsel Award, a Net Settlement Amount of at least $92,171.67 will be available for distribution to Class Members who do not opt-out of the Settlement.[2]

The Parties believe that this amount is fair, adequate, and reasonable, particularly in light of the risks and uncertainty regarding the merits of this case, including the substantial risk that Plaintiff may fail to establish liability on a classwide basis. Therefore, the Parties respectfully request that the Court grant this Motion for Preliminary Approval of Class Action Settlement.

//

//

---

[1] Capitalized terms herein shall have the same meaning as in the Joint Stipulation of Class Action Settlement, a copy of which is attached as Exhibit 1 to the Declaration of Kristen M. Agnew ("Agnew Decl.") filed concurrently herewith.

[2] Further, and without regard to the monetary relief conveyed by the Settlement, or any individual Class Member's decision to be bound thereby, after Class Counsel and Plaintiff filed this action, Defendant amended its wage statement format to include a separate line for total hours worked. Agnew Decl. ¶ 34.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    PROCEDURAL HISTORY

### A.    The Original Complaint.

Plaintiff is a former employee of Leprino. Declaration of Christopher Dominguez ["Dominguez Decl."] ¶ 2. On June 28, 2022, Plaintiff initiated this Action in Kings County Superior Court. Agnew Decl. ¶ 3. In the initial complaint, Plaintiff asserted class claims predicated on Leprino's alleged policy and practice of: (a) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay overtime wages, in violation of Labor Code sections 201-204, 510, 558 and 1194; (b) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay meal/rest period premiums, in violation of Labor Code sections 201-203, 226.7 and 512; (c) failing to incorporate all non-discretionary incentive wages in the regular rate of pay used to calculate and pay sick pay wages, in violation of Labor Code sections 201-204 and 246; (d) failing to provide accurate itemized wage statements, in violation of Labor Code section 226; and (e) engaging in Unfair Business Practices in violation of the UCL, the California Labor Code, and the applicable IWC Wage Orders. *See id.*

On August 12, 2022, Defendant removed this Action to the United States District Court, Eastern District of California (ECF No. 1). Shortly thereafter, the Parties met and conferred regarding the factual bases of Plaintiff's overtime regular rate, meal/rest period regular rate, and sick pay regular rate claims. *See* Agnew Decl. ¶ 11. As a result of these discussions, Plaintiff agreed that he would not pursue the overtime claim, and limit the meal/rest and sick pay regular rate claims to non-union employees. *See id*.

### B.    The First Amended Complaint.

Consistent with this agreement, Plaintiff filed a First Amended Complaint ("FAC") that: (1) limited the meal/rest period regular rate claim to non-exempt employees who worked at Leprino's non-union Lemoore West facility in Lemoore; (2) limited the sick pay regular rate claim to non-exempt employees who worked at Leprino's non-union Lemoore West facility in Lemoore; and (3) alleged a wage statement claim on behalf of all non-exempt employees who received the payment of overtime and/or shift differential wages. (ECF No. 31.)

//

**C.    The Parties Engaged in Discovery Concerning Defendant's Wage Statement Policies and Practices.**

The Parties engaged in extensive pre-class certification discovery. *See* Agnew Decl. ¶¶ 10-15. Amongst other topics, the discovery sought information concerning the number of putative class members, Defendant's policies and procedures regarding the information that is displayed on its wage statements. *See id.* at ¶ 12. Plaintiff also deposed designated Rule 30(b)(6) witness on topics related to the format of Defendant's wage statements, including the display of the total hours worked, shift differential hours, and overtime hours. *See id.* at ¶ 14. Defendant also took Plaintiff's deposition. *See id.* at ¶ 15.

**D.    The Parties Participate in Private Mediation.**

On January 18, 2024, the Parties engaged in a private mediation before David Lowe. *See* Agnew Decl. ¶ 16. The Parties were not able to resolve the matter at this time. *See id.*

**E.    The Class Certification Motion.**

On March 29, 2024, Plaintiff filed a motion for class certification, which was opposed by Defendant. (ECF Nos. 41 to 45). The motion for class certification was heard by Magistrate Judge Erica P. Grosjean, on July 12, 2024. (ECF No. 48). On January 3, 2025, Magistrate Judge Grosjean issued Findings and Recommendations Recommending that Plaintiff's Motion for Class Certification Be Granted, and Denying Defendant's Request for Leave to File a Sur-Reply. (ECF No. 56). Defendant timely filed objections.[3] (ECF No. 57.)

**F.    The Parties Resume Settlement Negotiations.**

On July 26, 2024, Defendant filed a Notice of Related Cases identifying the concluded matter of *Vazquez, et al. v. Leprino Foods Company, et al.*, United States District Court for the Eastern District of California Case No. 1:17-cv-00796-JLT-BAM (the "*Vasquez* Action"). (ECF No. 53.) The Court-approved settlement in the *Vasquez* Action released "claims for alleged

---

[3] On April 7, 2024, pursuant to Plaintiff's request to withdraw the class certification motion, the Court terminated the motion and vacated its Findings and Recommendations on Plaintiff's Motion to Certify Class. (ECF Nos. 60, 61.)

violations of California Labor Code sections 201, 202, 203, 204, 210, 218, 218.5, 218.6, 225.5, 226, 226.3, 226.6, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197.1, 1198, and 2699" during the period from November 15, 2009 through October 16, 2023. *See* Agnew Decl. ¶ 17.

In light of the *Vasquez* Action and settlement, which bars Plaintiff's first and second causes of action, the Parties agreed to redirect their resources to exploring the possibility of resolving the third cause of action for violation of Labor Code section 226(a) for the limited time period of October 17, 2023 through February 24, 2024. *See* Agnew Decl. ¶ 18. Over the course of several months, the Parties conducted settlement negotiations at arm's length in an adversarial position. *See id.* at ¶ 19. In connection with the negotiations, Defendant produced, among other things, data related to the number of putative class members who received a wage statement reflecting the payment of overtime and/or shift differential wages during the narrowed period of October 17, 2023 through February 24, 2024, and the number of wage statements reflecting the payment of overtime and/or shift differential wages. *See id.*

On or about February 21, 2025, the Parties reached an agreement on the material terms of the settlement. *See* Agnew Decl. ¶ 20. The Parties subsequently negotiated the terms of the Joint Stipulation of Class Action Settlement. *See id.*

**G.    The Operative Second Amended Complaint.**

As a condition of settlement, the Parties agreed to stipulate to the filing of a Second Amended Complaint ("Operative Complaint") in this Action. *See* Agnew Decl. ¶ 21. On April 24, 2025, the Parties submitted a joint stipulation to allow the filing of the Operative Complaint. *See id.* The Operative Complaint is limited to a single cause of action for violation of Labor Code section 226(a) brought on behalf of Plaintiff and the Class. *See id.*

**III.    <u>SUMMARY OF THE PROPOSED SETTLEMENT</u>**

**A.    The Class.**

The Settlement covers "all current and former non-exempt employees of Leprino in the State of California who received the payment of overtime and/or shift differential wages, at any time from Oct 17, 2023 to February 24, 2024 (the "Class Period")." *See* Settlement Agreement

("SA") §§ A-3, A-7. Defendant represents that there are approximately 965 individuals that comprise the Class. *See id.* at § A-3.

**B.    The Gross Settlement Amount.**

Pursuant to the Settlement, Defendant will pay the gross amount of Two Hundred Twenty Thousand Dollars ($220,000.00) as the Gross Settlement Amount. *See* SA § A-15. The Gross Settlement Amount is premised on Defendant's representation that Class Members received approximately 15,609 wage statements reflecting the payment of overtime and/or shift differential wages during the Class Period. *See id.* at § D-2. Thus, the dollar value of each wage statement that will be released by this Agreement is approximately $14.09. *See* Agnew Decl. ¶ 25.

**C.    The Enhancement Payment.**

In exchange for a general release from Plaintiff, Defendant agrees not to oppose or impede any application or motion by Plaintiff for an Enhancement Payment of up to Twelve Thousand Five Hundred Dollars ($12,500.00). *See* SA § D-5. This amount is intended to compensate Plaintiff for his efforts and work in prosecuting this case, including meeting and communicating with Class Counsel, reviewing pleadings, reading and verifying written discovery responses, appearing for deposition, and making himself available for mediation.  *See* Dominguez Decl. ¶ 7. Moreover, in consideration for the Enhancement Payment, Plaintiff also executed a general release of all claims, including a waiver under California Civil Code §1542, which other members of the Class did not have to do. *See* SA § E-2. Any portion of the Enhancement Payment that is not approved by the Court shall become part of the Net Settlement Amount. *See id.* at § D-5.

**D.    Settlement Administration Costs.**

The Settlement further provides for the payment of the fees and expenses reasonably incurred by the Settlement Administrator. *See* SA § D-6. The Parties have agreed to utilize Phoenix Settlement Administrators ("Phoenix") to administer the settlement, with the administration costs estimated to be Eleven Thousand Nine Hundred Ninety-Five Dollars ($11,995.00). *See id*. at §§ A-29, D-6; Declaration of Jodey Lawrence ("Admin. Decl.") ¶ 15, Ex. B. Any portion of the Settlement Administration Costs not used or approved by the Court shall be added to the Net Settlement Amount. *See id*. at § D-6.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.    Attorneys' Fees and Costs.

As part of the Settlement, Defendant agrees not to oppose or impede any application or motion by Class Counsel for attorneys' fees of up to one-third (1/3) of the Gross Settlement Amount ($220,000.00), *i.e.*, the sum of Seventy-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($73,333.33), and costs in the amount of up to Thirty Thousand Dollars ($30,000.00), subject to the Court finally approving this Settlement. *See* SA §D-4. Any portion of the requested attorneys' fees and/or costs not approved by the Court shall be added to the Net Settlement Amount. *See id*

### F.    Payments to Settlement Class Members.

The balance of the Gross Settlement Amount remaining after deduction of attorneys' fees (up to $73,333.33), costs (up to $30,000.00), Enhancement Payment (up to $12,500.00), and Settlement Administration Costs (up to $11,995.00), is the Net Settlement Amount. *See* SA §A-17. Plaintiff estimates that the Net Settlement Amount will be at least $92,171.67. *See* Agnew Decl. ¶ 29.

The Net Settlement Amount will be available for distribution to Settlement Class Members (*i.e.* Class Members who do not opt-out). *See* SA §§ A-30, D-7. Settlement Class Members will receive a *pro rata* share of Net Settlement Amount based on the number of wage statements reflecting the payment of overtime and/or shift differential wages each employee received during the Class Period. *See id*. at § D-7. All Individual Settlement Payments will be allocated as one hundred percent (100%) to penalties. *See* SA § D-8.

Based on an estimated Net Settlement Amount of $92,171.67, each Settlement Class Member may potentially recover approximately $95.52 or $5.91 per wage statement reflecting the payment of overtime and/or shift differential. *See* Agnew Decl. ¶ 31. The amount any particular Settlement Class Member will be entitled to recover will be greater or lower than this average, depending on the number of overtime and/or shift differential wage statements each respective Class Member received during the Class Period and the number of opt-outs received. *See id*.

Those funds represented by settlement checks returned as undeliverable and the funds which correspond with the settlement checks that are not negotiated within one hundred and eighty

(180) calendar days after issuance shall be remitted to the California Controller's Unclaimed Property Fund in the name of the Settlement Class Member. *See* SA § D-13.

### G. Scope of Release.

In exchange for the payments described above, Plaintiff and all Settlement Class Members will release Defendant and the Released Parties from "all claims, rights, demands, liabilities, actions, damages, causes of action, and charges of whatever nature, under state, federal, or local law, alleged in the Operative Complaint, or that could have been alleged based on the factual allegations pleaded in the Operative Complaint, including but not limited to, for violation of California Labor Code section 226" that accrued during the Class Period. *See* SA §§ A-23, E-3. The Released Claims were narrowly tailored to track the claims alleged in the Operative Complaint and do not include a Civil Code section 1542 waiver. The Released Claims also does not include a waiver of claims brought under PAGA.

### H. Proposed Implementation Schedule.

The Settlement Agreement contemplates the following schedule to administer the Settlement:

| Event | Deadline |
| --- | --- |
| Defendant to provide Class List and Data to the Settlement Administrator. | Within ten (10) business days of the Court's execution of the Order Granting Preliminary Approval. |
| Settlement Administrator to mail Notice Packet and establish the toll-free number. | Within ten (10) business days of its receipt of the Class List and Data from Defendant. |
| Deadline for Class Members to object to or opt out of the Settlement. | Within forty-five (45) calendar days after the mailing of the Notice Packet. |

## IV. PROVISIONAL AND CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

Federal Rule of Civil Procedure 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a) and (b)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

1998)); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)). Here, both requirements for preliminary approval of this class action settlement are satisfied.

### A.    The Settlement Class Satisfies FRCP 23(a) and (b).

To be certified, a settlement class must meet the following criteria: (1) numerosity, (2) typicality of the class representatives' claims, (3) adequacy of representation, (4) predominance of common issues, and (5) superiority. Fed. R. Civ. P. 23(a); *see also Hanlon*, at 1019. Here, as set forth below, all of these factors are met and provisional certification of the Class is appropriate.

### 1.    Rule 23(a)(1) – Numerosity.

Numerosity is easily satisfied as there are more than 965 individuals that comprise the Class. SA § A-3; *see also Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 members are numerous enough). Further, the proposed Class is readily ascertainable because all Class Members have worked for Defendant and can be easily identified through its employee and payroll records. SA § A-3; *see also In re NJOY Consumer Class Action Litigation,* 120 F. Supp. 3d 1050, 1091 (C.D. Cal. 2015).

### 2.    Rule 23(a)(2) – Commonality.

The commonality requirement is met if there are questions of law and fact that are common to the class. *Hanlon*, 150 F.3d at 1019. Plaintiff contends, and Defendant does not dispute for settlement purposes, that commonality is satisfied. SA § H-1. The claims of Plaintiff and the Class Members all flow from the same factual and legal issues, *i.e.*, Defendant's alleged failure to provide accurate itemized wage statements. Agnew Decl. ¶ 34; Dominguez Decl. ¶ 3.[4]

### 3.    Rule 23(a)(3) – Typicality.

The typicality requirement is met if the named representative's claims are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F. 3d at 1020. Plaintiff contends, and Defendant does not dispute for settlement purposes, that his claims are typical of

---

[4] Court routinely grant class certification for similar wage statement violations. *See Stafford v. Brink's, Inc*., 2015 WL 12699458 (C.D. Cal., 2015); *Willner v. Manpower Inc*., 35 F.Supp.3d 1116, 1127 (N.D. Cal., 2014); *see also Boyd v. Bank of America Corp.*, 300 F.R.D. 431, 440-44 (2014); *Magadia v. Wal-Mart Associates, Inc.,* 2018 WL 339139 (N.D. Cal. 2018) *Lubin v. The Wackenhut Corp*., 5 Cal. App. 5th 926, 959 (2016).

1   the claims of the Class because they arise from the same factual basis and are based upon the same

2   legal theories as those applicable to the Class Members. SA § H-1; Agnew Decl. ¶ 34; Dominguez

3   Decl. ¶ 3; *see also Wehner v. Syntex Corp*., 117 F.R.D. 641, 644 (N.D. Cal. 1987). Thus, Plaintiff's

4   claims are typical of the Class and satisfy this requirement.

5               **4.        Rule 23(a)(4) – Adequacy.**

6               The adequacy requirement is met if the named representative and his or her counsel have

7   no interests adverse to those of the Class Members and are committed to vigorously prosecuting

8   the case on behalf of the class. *Hanlon*, 150 F. 3d at 1020. Plaintiff contends, and Defendant does

9   not dispute for settlement purposes, that those requirements are met. SA § H-1. Throughout this

10  case, Plaintiff has demonstrated his commitment to prosecuting this Action on behalf of the Class

11  Members by, among other things, locating and retaining attorneys, filing this Action and willingly

12  exposing his name and reputation to criticism, participating in discovery and investigation,

13  appearing at deposition, and reviewing the settlement documents with counsel. Dominguez Decl.

14  ¶¶ 4-7. Plaintiff understands the claims and theories being advanced and has no conflicts with the

15  other members of the Class. *Id.* at ¶ 6. Plaintiff's interests in prosecuting this Class Action and

16  obtaining the most beneficial recovery possible fully comport with the interests of the Class

17  Members. *Hanlon*, 150 F. 3d at 1021. Moreover, any Class Member who wishes to opt-out or

18  object to the settlement will have the opportunity to do so. SA § G-1.

19              In addition, Class Counsel have no conflicts of interest and have vigorously prosecuted the

20  Class Action on behalf of Plaintiff and the Class. Agnew Decl. ¶¶ 2-21; Gavron Decl. ¶ 10; Lee

21  Decl. ¶ 8; Marder Decl. ¶ 12; Tulyathan Decl. ¶ 9. Class Counsel's commitment to this case is not

22  only demonstrated by their experience in litigating similar cases, having been certified by

23  numerous state and federal courts as competent and adequate class counsel, but also by the

24  monetary and non-monetary relief they have conferred and will continue to confer upon the Class

25  Members through their representation. Agnew Decl. ¶¶ 2-21, 38-44; Gavron Decl. ¶¶ 3-9; Lee

26  Decl. ¶¶ 3-7; Marder Decl. ¶¶ 3-11; Tulyathan Decl. ¶¶ 3-8.

27          **B.        Common Issues Predominate and Class-wide Treatment is Superior.**

28              Class certification is authorized where common questions of law and fact predominate over

individual questions and where class-wide treatment of a dispute is superior to individual litigation. Fed. R. Civ. P. 23(a) and (b)(3). Courts may consider that the class will be certified for settlement purposes only and that the manageability of trial is therefore irrelevant. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Here, Class Members share a common nucleus of operative facts and potential legal remedies. SA § H-1; *see also Hanlon*, 150 F. 3d at 1022. Common questions about Defendant's policies and practices predominate over individual questions, and the Class Members' potential legal remedies are identical – *i.e.*, all Class Members were subject to Defendant's allegedly unlawful practices of failing to provide accurate itemized wage statements. Further, class-wide determination of these issues is superior to other available methods for the fair and efficient adjudication of the controversy. SA § H-1; *see also Hanlon*, 150 F. 3d at 1023.

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Legal Standards for Preliminary Approval of Class Action Settlements.

The purpose of the preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the range of possible approval, and thus whether notice to the class of the terms and conditions of the settlement and the scheduling of a formal fairness hearing are warranted. *Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016); 4 *Newberg* § 11.25. In passing on class action settlements, this Court has broad discretion to determine whether a settlement is fair under the circumstances of the case. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied. Indeed, the Court need only find that the settlement falls within the range of possible final approval, also described as the "reasonable range." *Cordy v. USS–Posco Industries*, 2013 WL 4028627, at *4 (N.D.Cal., 2013); 4 *Newberg* § 11.25.

To make this fairness determination, courts consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel...." *Hanlon*, 150 F.3d at 1026 (citations omitted). "[I]f the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has

no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing." *Chun-Hoon v. McKee Foods Corp.,* 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009).

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialties,* 2011 U.S. Dist. Lexis 38667, at *19 (N.D. Cal April 1, 2011). The Ninth Circuit has repeatedly ruled that courts "put a good deal of stock in [class settlements that are] the product of arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 965 (9th Cir. 2009); *Hanlon,* 150 F.3d at 1027. Accordingly, a court's inquiry "into what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned." *Hanlon,* 150 F.3d at 1027.

A settlement is presumed fair where: (1) it is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. *Spann, supra,* 314 F.R.D. at 323. The law and public policy strongly favor settlement prior to trial, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, expense, and rigors of litigation. *Churchill Village,* 361 F.3d at 576; *In re Pac. Enters. Securities Litig.,* 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs,* 955 F.2d at 1276. The Settlement here satisfies all of the legal standards for preliminary approval.

**B.    The Settlement Is Not the Result of Fraud or Collusion.**

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they have been involved in significant discovery and negotiations for some period of time, appear to be competent, have experience with this type of litigation, and have exchanged substantial evidence from the opposing party. *See Newberg on Class Actions*, *supra,* at § 11.47; *Nat'l Rural Telecomms. Coop.*, 221 F.R.D.

at 528 (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("[s]o long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement…[citations] and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (pre-certification class action settlements should be scrutinized for "clear sailing" provisions "providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class'"). Here, both Plaintiff's and Defendant's counsel have a great deal of experience in wage and hour class action litigation. Plaintiff's counsel has been approved as class counsel in a number of wage and hour class actions and have extensive litigation experience. Agnew Decl. ¶¶ 38, 43; Gavron Decl. ¶ 7; Lee Decl. ¶¶ 4-7; Marder Decl. ¶¶ 3-11; Tulyathan Decl. ¶¶ 3-8. Moreover, as discussed above, this settlement was reached only after extensive litigation and a recommendation that the class be certified. Agnew Decl. ¶¶ 2-20.

Despite the asserted fairness of the settlement terms, as set forth in the Notice Packet, should any Class Member wish to pursue his or her own case for the claims being released herein, each Class Member has the right to submit a request for exclusion (*i.e.*, opt-out) from the settlement of the class claims. *See* SA § G-1. Moreover, as set forth in the Notice Packet, Class Members are advised of their right to attend the final approval hearing and object to any of the terms contained in the proposed Settlement Agreement. *See* SA, Ex. A.

## C.    The Settlement Is a Fair Compromise Given the Risks and Uncertainties Presented by Continued Litigation.

Although Plaintiff believes that a class can be certified, Plaintiff also believes in the fairness of the settlement that is based on factoring in the uncertainty and risks to Plaintiff involved in not prevailing on the theories alleged in the Second Amended Complaint and potential for appeals. Agnew Decl. ¶ 37; Gavron Decl. ¶ 2; Lee Decl. ¶ 2; Marder Decl. ¶ 2; Tulyathan Decl. ¶ 2.

As set forth in the Operative Complaint, Plaintiff alleges a single cause of action for violation of Labor Code section 226(a). During the Class Period, Defendant's wage statements separated overtime hours into "overtime 1.0" and "overtime premium." However, the overtime 1.0 hours and overtime premium hours constitute the same hours of work. Relatedly, the shift differential hours displayed on a wage statement constitute a premium payment employees receive for working designated hours– not a separate hour worked. As a result of this practice, Plaintiff alleges that the wage statements presented to non-exempt employees include redundant hours, which do not allow for the hours displayed on the wage statement to be easily summed to obtain the total hours worked. *See* Agnew Decl. ¶ 34.

Defendant asserted numerous defenses aimed at circumscribing both the Class' claims and the penalties available to it. *See* Agnew Decl. ¶ 36. As argued by Defendant in opposition to class certification, Leprino's wage-statement policy is lawful because even if all the hours listed do not sum up to total hours worked, the wage statements accurately show total hours worked. (ECF No. 43 at pp. 15:16-19:17.) Defendant further argues that Plaintiff will be unable to establish that the alleged Section 226(a) violation was "knowing and intentional" because it harbored a reasonable, good-faith belief that its wage statements complied with the law. *See Naranjo v. Spectrum Security Services, Inc.*, 15 Cal. 5th 1056, 1087 (2024) (employer's failure to include meal and rest period premium pay on the wage statements was not "knowing and intentional" because it had a good faith belief that it was not in violation of Labor Code section 226); *Apodaca v. Costco Wholesale Corp.*, 2014 WL 2533427, at *3 (C.D. Cal. June 5, 2014) ("Where an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional"); *Arroyo v. Int'l Paper Co.*, 611 F. Supp. 3d 824, 841-43 (N.D. Cal. 2020) (ruling that employer did not knowingly and intentionally violate section 226(a) in part because it had conducted extensive internal audit, it made changes to increase wage statement's clarity, and employer's payroll compliance specialist declared that "there were never any complaints from" employees "claiming that they did not understand 'Regular Hours' to equal the total hours worked, or claiming that they did not understand their overtime rate"). In support of this argument, Defendant contends that Leprino periodically reviews its wage statements for compliance, was unaware that employees

were confused by the hours displayed on the wage statement, and modified its wage statement policies in response to this lawsuit.[5] (ECF No. 43 at pp. 19:18-21:10); *see Apodaca*, 2014 WL 2533427, at *3 (employer did not knowingly and intentionally violate 226(a) in part because plaintiff "never even asked her employer what the term ['float overtime'] meant," there was no evidence that wage statements confused employees, and employer "changed its wage statements as a result of this lawsuit").

> ### D.     The Gross Settlement Amount Represents 14.54% of the Maximum Penalties at Issue.

Based on the data provided by Defendant, Class Counsel estimated total penalties to be approximately $1,512,650. Agnew Decl. ¶ 35. Therefore, Plaintiff's settlement of $220,000 is about 14.54% of the total estimated liability. Numerous courts have held that **gross** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable. *See, e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case"); *Bellinghausen v. Tractor Supply Co.*, No. 13-CV-02377-JSC, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair); *Van Ba Ma v. Covidien Holding Inc.*, U.S. Dist. Ct. Case No. 8:12-cv-02161 (C.D. Cal. 2014) (court granted preliminary approval of wage and hour class settlement which obtained only 9.1% of projected damages, given the risks of continued litigation) *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (holding that gross class action settlement of approximately 15% of the

---

[5] Effective February 24, 2024, Defendant modified its wage statements to include a total hours worked field. *See* Agnew Decl. ¶ 34.

potential recovery was fair and reasonable); *Greko v. Diesel U.S.A., Inc*., No. 10–cv–02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24% was reasonable).

### E.    The Court Should Order Dissemination of the Notice.

F.R.C.P. Rule 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  3 *Newberg* § 8:32.

### 1.    The Class Notice is Accurate and Informative.

The Notice of Proposed Class Action Settlement that will be sent to all Class Members, will inform them of the terms of the Settlement, and is neutrally worded so as to avoid prejudice. The Notice Packet meets all of the requirements of procedural due process and Rule 23(e) by identifying the Plaintiff and Defendant; describing the claims and the Action in a straightforward manner; succinctly describing the essential terms of the Settlement, including the Class Representative's proposed Enhancement Payment and the amount Class Counsel will request for attorneys' fees and costs; identifying the claims that are being released; identifying all parties against whom claims are being released; providing Class Members with information on how to participate in, exclude themselves from or object to the Settlement; clearly providing all applicable deadlines for such action; informing Class Members of the consequences of excluding themselves from the Settlement; and advising Class Members that, if they choose to participate and the Settlement is approved, they will be bound by the resulting judgment, including informing them that this may affect their ability to participate in other, identified pending litigation.[6] Further, the Notice Packet clearly explains the manner in which Class Members can obtain further information and that the Final Approval Hearing may be moved without further notice. SA § G-1, Ex. A. In short, the Notice Packet will provide Class Members with all of the necessary information to make

---

[6] *See Trotsky v. Los Angeles Fed. Sav. & Loan*, 48 Cal.App.3d 139, 152 and fn. 13 (1975).

1    an informed decision regarding the Settlement.

2    **2.    The Class Notice Satisfies Due Process.**

3    Courts are vested with broad discretion to fashion an appropriate notice program, which

4    must be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(e)(1) and

5    23(c)(2)(B). The Settlement provides for direct mail notice of the settlement to each Class Member

6    based upon Defendant's records, performing additional skip traces as necessary. SA § F-3, F-4.

7    Because all Class Members are current or former employees of Defendant, for whom Defendant

8    has current or last known addresses as well as Social Security numbers, notice here is simpler and

9    more reliable than in other types of class actions that require published notice to reach

10   unidentifiable class members. The Notice Packet is consistent with class notices approved by state

11   and federal courts, and under the circumstances here, constitute the best notice practicable. *Spann,*

12   *supra,* 314 F.R.D. at 331.

13   **F.    The Settlement Administrator's Fees are Reasonable.**

14   The Parties have selected Phoenix Class Action Administration Solutions to serve as

15   Settlement Administrator. SA § A-29. Phoenix has substantial experience in administering class

16   action settlements. Admin Decl. ¶ 5, Ex. A. Phoenix's declared fees and costs will be paid out of

17   the Gross Settlement Amount. SA § D-6. Phoenix will, among other things, distribute the Court-

18   approved Notice Packet, establish and maintain a toll-free informational telephone support line to

19   assist Class Members who have questions, calculate the Individual Settlement Payments, prepare

20   and mail settlement checks, respond to Class Member inquiries/disputes as appropriate, prepare

21   any appropriate tax forms, and generally perform all normal and customary duties associated with

22   the administration of such settlements. SA §F-1. Plaintiff seeks preliminary approval of the

23   Settlement Administration Costs of up to $11,995.00. SA § D-6.

24   **G.    The Enhancement Payment to Plaintiff is Reasonable.**

25   Named plaintiffs in class action litigation are eligible for reasonable service payments.

26   *Stanton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003). Service payments are intended to

27   "compensate class representatives for work done on behalf of the class, to make up for financial

28   or reputational risk undertaken in bringing the class action, and, sometimes, to recognize their

willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see also In re Cellphone Fee Termination Cases,* 186 Cal.App.4th 1380, 1394 (2010). The amount of any service payment, however, is within the sound discretion of the district court. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000). Service payments are particularly appropriate in wage-and-hour class actions where a plaintiff undertakes a significant reputational risk by bringing suit against their former employers. *Rodriguez*, 563 F.3d at 958-959. In deciding whether to approve an service payment, a court should consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *In re Cellphone Fee Termination Cases*, 186 Cal.App.4th at 1394-95 (internal quotation marks omitted); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (applying similar factors to determine reasonableness of service payments).

All of the aforementioned factors support the $12,500.00 service payment requested here. The sought service payment is in line with amounts commonly awarded by courts in similar wage and hour class actions, [7] and is fair, reasonable and appropriate under the circumstances of this case, **including Plaintiff's provision of a general release and Civil Code section 1542 waiver**.

---

[7] *See e.g. Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) (approving $11,250 service award to each of the two class representatives in a trucker meal break class action); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of $10,000 each from a $300,000 settlement fund in a wage/hour class action); *Castellanos v. Pepsi Bottling Group, Inc.,* No. RG07332684 (Alameda Cnty. Super. Ct., March 11, 2010) (approving incentive award of $12,500 in a wage and hour class action settlement); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *28 (E.D. Cal. Oct. 19, 2006) ("the court finds plaintiffs' enhancement payments of $15,000 each to be reasonable."); *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008 (approving "$25,000 incentive award for each Class Representative" in wage an hour settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class").

1    Plaintiff, who has worked diligently with Class Counsel throughout this entire litigation, including

2    taking numerous calls with Class Counsel, participating in the discovery process, and participating

3    in the settlement negotiations, should be rewarded for taking the initiative to pursue these claims

4    on behalf of his coworkers, and for his role in reaching a substantial settlement providing for

5    valuable monetary relief to the Class. Dominguez Decl. ¶ 7.

6           **H.**     **Class Counsel's Attorneys' Fees and Costs are Reasonable, Fair, and**

7                  **Appropriate.**

8          Plaintiff, in the settlement of this wage and hour class action, is entitled to payment of

9    attorneys' fees and costs. Cal. Lab. Code § 226(e)(1); *Early v. Superior Court,* 79 Cal.App.4th

10    1420, 1427 (2000). An attorneys' fees award is justified where the legal action has produced

11    benefits by way of a voluntary settlement. *Maria P. v. Riles*, 43 Cal.3d 1281, 1290-91 (1987);

12    *Westside Cmty. For Indep. Living, Inc. v. Obledo*, 33 Cal.3d 348, 352-53 (1983). At the Final

13    Approval Hearing, Plaintiff will seek an award of Class Counsel's fees under the common fund

14    doctrine, which is customarily used in awarding fees and costs in settlement of Labor Code class

15    actions and an approved method under California law. *Wershba*, 91 Cal.App.4th at 254; *Lealao*,

16    82 Cal.App.4th 19, 26-30; *Serrano v. Priest*, 20 Cal.3d 25, 34 (1977) ("[w]hen a number of persons

17    are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the

18    benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be

19    awarded attorney's fees out of the fund."); *see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 478

20    (1980) ("[A] lawyer who recovers for a common fund…is entitled to a reasonable attorney's fee

21    from the fund as a whole."); *Hanlon, supra*, 150 F.3d. at 1029. The traditional method for

22    calculating a common fund fee is to award a percentage of the total fund. *Blum v. Stenson,* 465

23    U.S. 886, 900 n. 16 (1984); *Mex. Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.

24    2002). Courts have customarily approved payments of attorney's fees of as much as one-third to

25    forty percent of the common fund in comparable wage and hour class actions. *Newberg*, § 14:6

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

(Studies show that "Fee awards in class actions average around one-third of the recovery").[8]

Here, Class Counsel will seek attorneys' fees of one-third of the Gross Settlement Amount, or $73,333.33, and declared litigation costs of up to $30,000.00. SA § D-4. Because these fees and costs are reasonable, within the range commonly awarded by state and federal courts in wage and hour class actions as set forth above, and because Plaintiff and Class Counsel have conveyed and will convey significant benefits upon the Class, the Court should preliminarily approve the requested fee and cost award as fair and reasonable.

## VI.  **CONCLUSION**

For all the reasons stated above, Plaintiff's unopposed Motion for Preliminary Approval should be granted.

DATED:  April 24, 2025                DIVERSITY LAW GROUP


By:    ___/s/ Kristen M. Agnew___
            Larry W. Lee
            Kristen M. Agnew
            Attorneys for Plaintiff and the Class

---

[8] *See, e.g.*, *Wren v. RGIS Inventory Specialists* No. C-06-05778, JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (approving fee award that constituted 42% of the common fund in wage and hour class and collective action); *Boyd*, 2014 WL 6473804, at *8-*12 (awarding one-third of settlement in wage and hour case on behalf of real estate review appraisers); *Birch v. Office Depot, Inc.* Case No. 06cv1690 DMS, at *13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16,000,000 wage and hour class action settlement); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 at *5-*7 (N.D. Cal. Aug. 9, 2010)  (awarding one-third of $4.5 million settlement fund as fees in class case alleging failure to reimburse employees for expenses); *Quezada v. Con-Way Freight, Inc.*, No. 09-cv-3670, at ¶ 9 (N.D. Cal. Jan. 15, 2015) (awarding one-third of $2 million settlement fund as fees in class case alleging failure to pay wages for all hours worked); *Singer v. Becton Dickinson and Co.*, No. 08-CV-821-IEG (BLM) 2010 WL 2196104, at *8 (S.D. Cal. Jun. 1, 2010) (approving fee award of 1/3 of the common fund; award was similar to awards in three other cited wage and hour class action cases where fees ranged from 30% to 40%); *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010)  266 F.R.D. 482, 491-92 (citing five recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30% to 33%); *Cicero*, 2010 WL 2991486, at *6 (noting that fees of one-third are common in wage and hour settlements below $10 million, citing cases); *Rieve v. Coventry Healthcare Inc.* (C.D. Cal. Aug. 8, 2014)  No. 11-cv-1032-DOC, at ¶ 7 (awarding one-third of $3 million settlement fund as attorneys' fees in wage & hour class settlement).