1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER DOMINGUEZ, *as an individual and on behalf of all others similarly situated*,

Plaintiff,

v.

LEPRINO FOODS COMPANY, *a Colorado corporation*,

Defendants.

Case No.  1:22-cv-01018-KES-EPG

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS CERTIFICATION AND APPROVAL OF A CLASS ACTION SETTLEMENT

(ECF Nos. 63, 73)

The parties, Plaintiff Christopher Dominguez and Defendant Leprino Foods Company, have reached a settlement in this putative class action case that alleges a violation of California Labor Code section 226(a)(2). Before the Court is Plaintiff's unopposed motion to preliminarily certify the settlement class and approve the parties' proposed settlement. (ECF No. 63).

Upon review of Plaintiff's motion, the record, and the September 18, 2025 hearing, the Court will grant the motion. (ECF No. 63).[1]

\\\

\\\

\\\

---

[1] The parties have provided the undersigned with limited consent pursuant to 28 U.S.C section 636(c) and Local Rule 305 to adjudicate Plaintiff's Motion for Preliminary Approval of the Class Action Settlement. (ECF No. 71).

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.      BACKGROUND**

      **A.  Procedural History**

On June 28, 2022, Plaintiff initiated this action by filing a class action complaint in California Superior Court for the County of Kings. (ECF No. 1-1). Defendant removed the case to the United States District Court for the Eastern District of California on August 12, 2022. (ECF No. 1, p. 9).

Pursuant to a stipulation of the parties, Plaintiff filed his First Amended Complaint on February 14, 2024. (ECF Nos. 31).

On March 29, 2024, Plaintiff filed a motion for class certification. (ECF No. 41). Defendant filed an opposition to Plaintiff's class certification motion on May 24, 2024. (ECF No. 43). On June 14, 2024, Plaintiff filed a reply to Defendant's opposition (ECF No. 44). Defendant filed a request for leave to file a sur-reply on June 20, 2024. (ECF No. 45). The Court held a hearing on the motion for class certification on July 12, 2024. (ECF No. 48).

On July 26, 2024, while the motion for class certification was pending, Defendant filed a Notice of Related Cases identifying the settled action of *Vazquez, et al. v. Leprino Foods Company, et al.,* in the United States District Court for the Eastern District of California, Case No: 1:17-cv-00796-JLT-BAM. (ECF No. 53). In *Vasquez,* there was a Court-approved settlement that released "claims for alleged violations of California Labor Code sections 201, 202, 203, 204, 210, 218, 218/5, 218/6, 225.5, 226, 226.3, 226.6, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197.1, 1198, and 2699" during the period from November 15, 2009, through October 16, 2023. (ECF No. 63, p. 14).  According to the parties, this settlement resulted in a bar of Plaintiff's first and second causes of action alleged in the First Amended Complaint.

On January 3, 2025, the undersigned issued Findings and Recommendations Recommending that Plaintiff's Motion for Class Certificated Be Granted. (ECF No. 56). Defendant timely filed objections. (ECF No. 57).

On or about February 21, 2025, the parties reached an agreement on the material terms of the settlement and Plaintiff subsequently filed a motion for Preliminary Approval of Class Action Settlement (ECF No. 63, p. 14). As condition of the proposed settlement, the Parties agreed to file a Second Amended Complaint. (*Id.,* p. 14).

### B.  The Second Amended Complaint

Plaintiff filed the Second Amended Complaint on May 8, 2025.  (ECF No. 68).  Plaintiff's Second Amended Complaint alleges a single cause of action for violation of California Labor Code § 226(a). (ECF No. 68). In this cause of action, Plaintiff alleges Defendant failed to provide accurate itemized wage statements because, as the Plaintiff and Class were hourly non-exempt employes, the wage statements should have accurately reflected the total hours worked, whereas Defendant's wage statements issued to Plaintiff and the Class failed to accurately identify and itemize this information, in violation of California Labor Code § 226(a). (*Id.,* p.7)

### C.  Motion for Preliminary Approval of Settlement

On April 24, 2025, Plaintiff filed a Motion for Preliminary Approval of a Class Settlement (ECF No. 63).  Plaintiff moves the court for preliminary approval of the proposed Joint Stipulation of Class Action Settlement entered into by Plaintiff and Defendant Leprino Foods Company (Defendant).  Plaintiff asks that the Court grant certification of the proposed class for settlement purposes only, and make other orders to facilitate final approval and settlement of the class claims in the Second Amended Complaint.

#### 1.  Proposed settlement class and class period

The proposed settlement class covers "all current and former non-exempt employees of [Defendant] in the State of California who received payment of overtime and/or shift differential wages, at any time from October 17, 2023, to February 24, 2024." (ECF No. 63, p. 14). Defendant represents that there are approximately 965 individuals that comprise the class. (*Id.,* p. 15).

#### 2.  Terms of the settlement agreement

The Gross Settlement Amount ("GSA") is $220,000. The GSA is premised on Defendant's representation that Class Members received approximately 15,609 wage statements reflecting the payment of overtime and/or shift differential wages during the Class Period. The approximate dollar value of each wage statement is $14.09. (ECF No. 63, p.15). The agreement proposes that the gross settlement amount be allocated as follows:

|  | Settlement Allocation |
|---|---|
| GSA | $220,000 |

| Enhancement Payment Not to Exceed | $12, 500 |
|---|---|
| Litigation Costs Not to Exceed | $30,000 |
| Administrator Costs Not to Exceed | $11, 995 |
| Attorney Fees Not to Exceed | $73,333.333 |
| **Expected Net Settlement Amount for Estimated 965 Members** | **$92, 171.67** |

(ECF No. 63, pp. 15-16).

Under the proposed settlement, Settlement Class members will receive a pro rata share of the Net Settlement Amount based on the number of wage statements reflecting the payment of overtime and/or shift differential wages each employee received during the Class Period. (ECF. No 63, p. 16). Based on this pro rata share, each Settlement Class Member may recover approximately $95.52 or $5.91 per wage statement. (*Id.*). The amount recovered by a Settlement Class member may be greater or lower than the average depending on the number of overtime and/or shift differential wage statements each respective Class Member received during the Class Period and the number of classes opt-outs received. (*Id.*).

As part of the settlement, Plaintiff and all class members who do not opt out, and all aggrieved employees, will release Defendant from "all claims, rights, demands, liabilities, actions, damages, causes of action, and charges of whatever nature, under state, federal, or local law, alleged in the Operative Complaint, including but not limited to, for violation of California Labor Code section 226." The released claims are narrowly tailored to align with the claims alleged in the Second Amended Complaint and do not include a California Civil Code section 1542 waiver[2]. (ECF No. 63, p. 17).

The funds are represented by settlement checks and those checks returned as undeliverable as well as the funds represented by settlement checks not negotiated within one-

---

[2] Section 1542 provides as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

hundred and eighty calendar days after issuance will be issued to the California Controller's

Unclaimed Property Fund in the name of the Settlement Class Member. (ECF No. 63, p.17).

Within ten (10) business days after the order granting preliminary approval of the

settlement, Defendant will provide the Settlement Administrator with the Class List and Data.

(ECF No. 63, p. 17). Within 10 days of the receipt of the Class List and Data, the Settlement

Administrator will mail a notice packet and establish a toll-free number. (*Id.*) A copy of the

proposed notice is attached to Plaintiff's motion and copy of the settlement opt-out form has been

provided. (ECF No. 63-1, pp. 39-45).

## II.    LEGAL STANDARDS FOR CLASS CERTIFICATION AND SETTLEMENT AND APPROVAL OF PAGA REPRESENTATIVE ACTION

A court tasked with determining whether to approve a proposed class action settlement

will almost always be confronted with a "difficult balancing act." *Allen v. Bedolla*, 787 F.3d

1218, 1223 (9th Cir. 2015). "On the one hand, . . .  there is a strong judicial policy that favors

settlements, particularly where complex class action litigation is concerned." *Id.* (internal

quotation marks and citations omitted). "But on the other hand, settlement class actions present

unique due process concerns for absent class members, and the district court has a fiduciary duty

to look after the interests of those absent class members." *Id.* (internal quotation marks and

citations omitted). "To ensure the interests of the absent class members are properly safeguarded,

the judge must adopt the role of a skeptical client and critically examine the class certification

elements, the proposed settlement terms, and procedures for implementation." *Lusk v. Five Guys*

*Enterprises LLC*, No. 1:17-CV-00762-AWI-EPG, 2021 WL 2210724, at *2 (E.D. Cal. June 1,

2021) (internal quotation marks and citation omitted).

Class actions are governed by Federal Rule of Civil Procedure 23. There are two stages to

approving a class action settlement. In the first stage, which is at issue here, "the court

preliminarily approves the settlement pending a fairness hearing, temporarily certifies a

settlement class, and authorizes notice to the class." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363

(E.D. Cal. 2014). At the second stage, the Court holds a fairness hearing, entertaining objections

from putative class members, and thereafter making "a final determination as to whether the

parties should be allowed to settle the class action pursuant to the terms agreed upon." *Id.*

"Parties seeking class certification must satisfy each of the four requirements of Rule

5

23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b)," with Plaintiffs arguing here that, under Rule 23(b)(3), common questions of law or fact predominate over individual class member questions and that a class action is superior to other methods for fairly and efficiently adjudicating this case. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017); (ECF No. 253-1, p. 20). Plaintiff bears the burden of meeting these requirements. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).

After the certification inquiry, the Court considers whether the settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (describing factors guiding inquiry under Rule 23(e)(2)).

The Court will evaluate the settlement agreement "as a whole" and "for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The Court does "not have a duty to maximize settlement value for class members," but instead, the "inquiry is much more modest and limited to ensuring that the class settlement is fair, reasonable, and adequate." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025). Relatedly, the Court does not "have the ability to delete, modify or substitute certain provisions"; rather, "[t]he settlement must stand or fall in its entirety." *Id.* (internal citation and quotation marks omitted).

## III.    ANALYSIS

The Court will grant Plaintiff's motion for preliminary class certification and approval of the class action settlement for the reasons discussed below.

The Court will begin with the Rule 23(a) and(b) factors regarding class certification and then turn to the Rule 23(e) factors regarding approval of the settlement.

### A.    Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Courts in the Ninth Circuit

1   have found the requirement satisfied when the class is composed of as few as thirty-nine

2   members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing

3   *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine,

4   sixty-four, and seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other*

5   *grounds*, 459 U.S. 810, 103 (1982)).

6       Here, joinder of the 965 class members as plaintiffs would be impracticable. (ECF No. 63,

7   p. 18). Furthermore, the proposed Class is ascertainable because all proposed members have been

8   employed by Defendant and can be easily identified through Defendant's employee and payroll

9   records. (ECF No. 63, p. 18, citing ECF No. 63-1, p. 41) Thus, the Court finds the numerosity

10  requirement satisfied.

11              **2.  Commonality**

12      Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

13  R. Civ. P. 23(a)(2). Class members need not "have all suffered a violation of the same provision

14  of law"; rather, their claims must "depend upon a common contention." *Dukes*, 564 U.S. at 350.

15  The "common contention . . . must be of such a nature that it is capable of classwide resolution –

16  which means that determination of its truth or falsity will resolve an issue that is central to the

17  validity of each one of the claims in one stroke." *Id.* "The commonality preconditions of Rule

18  23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d

19  at 1019. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.* "The existence of shared

20  legal issues with divergent factual predicates is sufficient, as is a common core of salient facts

21  coupled with disparate legal remedies within the class." *Id.*

22      The claims here are based on Defendant's alleged failure to provide accurate itemized

23  wage statements that complied with California Labor Code section 226. (ECF No, 63, p.18, citing

24  ECF Nos. 63-1, ¶ 34; 63-4, ¶ 3). As such, the claims of Plaintiff and the Class stem from the same

25  factual and legal issues and as a result, the Court finds the commonality requirement satisfied. *See*

26  *Kincaid v. Educ. Credit Mgmt. Corp., Inc*., No. 2:21-CV-00863-TLN-JDP, 2024 WL 1344595, at

27  \*4-10 (E.D. Cal. Mar. 29, 2024) (finding commonality requirement met for similar Labor Code

28  claims); *Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-CV-00606-DAD-EPG, 2017 WL 3173006,

    at \*6 (E.D. Cal. July 26, 2017) (same).

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Ninth Circuit has explained, "[t]he test of typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Jones v. Shalala*, 64 F.3d 510, 514 (9th Cir. 1995) (citing *Hanon*, 976 F.2d at 508).

While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here, as Plaintiff notes, his claims are typical of the claims of other Class members because they arise from the same facts and are predicated upon the same legal theories. (ECF No. 63, p.19, citing ECF Nos. 63-1, ¶ 34; 63-4, ¶ 3). The Court finds the typicality requirement satisfied.

### 4.    Adequacy of representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations omitted). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

Plaintiff contends and Defendant offers no dispute that for settlement purposes, Plaintiff and his counsel are adequate representatives of the Class. (ECF No. 63, p.19). Specifically, it is represented that Plaintiff has been committed to pursuing this action on behalf of the Class by "locating and retaining attorneys, filing this [a]ction and willingly exposing his name and reputation to criticism, participating in discovery and investigation, appearing at deposition, and reviewing the settlement documents with counsel." (*Id.*). Furthermore, Plaintiff contends that his interests in pursuing this action and obtaining the most beneficial recovery possible are in the interests of the entire class. Additionally, Plaintiff argues that any class member who wishes to opt-out or object to the settlement will have the opportunity to do so. (*Id.*).

Further, Plaintiff states that Plaintiff's counsel has no conflicts of interest that have arisen, and counsel is committed to the case and has experiencing in litigating similar cases, supported by certifications by numerous state and federal courts as competent and adequate class counsel. (ECF No. 63, p. 19). Additionally, the Court notes that "[t]he competence of counsel seeking to represent a class" may be evaluated by considering whether they "are labor lawyers experienced in class actions." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Subsequently, Plaintiff's counsel has provided declarations supporting their experience by listing numerous class action cases they have been involved in. (ECF Nos. 63-1 ¶ 38; 63-2 ¶ 7; 63-3, ¶¶3-8; 63-5, ¶ 10; 63-6 ¶¶ 8-9). Accordingly, the Court finds the adequacy requirement satisfied.

### B. Rule 23(b) Requirements

Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); (ECF No. 22, p. 24). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623-24).

#### 1. Predominance

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &*

1 | *Procedure* § 1778 (2d ed.1986)).

2 |       Here, there are issues that will predominate over individual issues in the case, specifically

3 | whether Defendant's wage statements violated California law because they were not accurate nor

4 | itemized correctly. As such, "[a] common nucleus of facts and potential legal remedies dominates

5 | this litigation," the Court finds that the predominance requirement is met. *Hanlon*, 150 F.3d at

6 | 1022.

7 |       **2.  Superiority**

8 |       Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly

9 | and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Pertinent to this finding is:

10 | "(A) the class members' interests in individually controlling the prosecution or defense of

11 | separate actions; (B) the extent and nature of any litigation concerning the controversy already

12 | begun by or against class members; (C) the desirability or undesirability of concentrating the

13 | litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class

14 | action." *Id.; see Amchem*, 521 U.S. at 616. The purpose of this "requirement is to assure that the

15 | class action is the most efficient and effective means of resolving the controversy," and "[w]here

16 | recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis,

17 | this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617

18 | F.3d 1168, 1175 (9th Cir. 2010) (citation omitted); *see Local Joint Exec. Bd. of*

19 | *Culinary/Bartender Tr. Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("This

20 | case involves multiple claims for relatively small individual sums. . . . If plaintiffs cannot proceed

21 | as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity

22 | between their litigation costs and what they hope to recover.").

23 |       The Court concludes that a class action is a superior method of resolving this action. First,

24 | it does not appear economical for each individual member of the proposed 965-member class to

25 | bring their claims separately. The class action litigation here allows the class members to pool

26 | their individual claims together, which claims would otherwise not be economical to litigate. *See*

27 | *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sand*s, 244 F.3d 1152, 1163

28 | (9th Cir. 2001) ("This case involves multiple claims for relatively small individual sums. . . .. If

      plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as

individuals because of the disparity between their litigation costs and what they hope to recover."). Further, a lack of knowledge of the legal system and limited economic resources would likely deprive most class members of the opportunity to pursue their claims outside of a class action. Finally, any prospective class member that wishes to pursue their own case may opt out of the class.

Second, there does not appear to be any related pending litigation. Third, this District is a desirable forum for the litigation as the operative complaint alleges that Plaintiff primarily performed his work for Defendant within the City of Lemoore and County of Kings. (ECF No. 1, p. 3-4). Thus, much of the evidence will likely be found within this District and the Court can efficiently conduct proceedings here. *See Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 486 (N.D. Cal. 2017) ("This case involves drivers who serviced routes in Northern California, many of whom worked out of Flowers warehouses in San Jose and Salinas, which are in this District. Because much of the evidence will be found here, it would be efficient to try the case here."). Finally, there are no apparent difficulties likely to be encountered in managing this class action. Thus, the Court finds that the superiority requirement is met.

### C.    Rule 23(e) Requirements

If a proposed settlement agreement "would bind class members," the Court must find that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit has provided the following guidance regarding Rule 23(e)(2):

> In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors," viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of

1
2
3

> further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

4

*Kim*, 8 F.4th at 1178 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th

5

Cir. 2011)); *see Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing the

6

*Churchill* factors). "In addition, the settlement may not be the product of collusion among the

7

negotiating parties." *In re Mego*, 213 F.3d at 458. "This list is not exclusive, and different factors

8

may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,

9

1376 (9th Cir. 1993) (citations omitted).

10

Moreover, consideration of these factors alone is insufficient. *Id.* at 1179. Because Rule

11

23(e)(2) also requires courts to "now consider 'the terms of any proposed award of attorney's

12

fees' when determining whether 'the relief provided for the class is adequate[,]' . . . courts must

13

balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class in

14

determining whether the settlement is 'adequate' for class members." *Briseño v. Henderson*, 998

15

F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). This is done by

16

reviewing the "so-called *Bluetooth* factors to smoke out potential collusion." *Id.* at 1023. Signs of

17

such collusion include:

18
19
20

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

21

*Id.* (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947).

22

The Court will begin with the *Churchill* factors to determine if the proposed settlement

23

aligns with Rule 23(e)(2) and then move to the *Bluetooth* factors, to determine if there are any

24

signs of potential collusion.

25

### 1. *Churchhill Factors*

### a. The strength of Plaintiff's case

26

A court should "evaluate objectively the strengths and weaknesses inherent in the

27

litigation and the impact of those considerations on the parties' decisions to reach these

28

1   agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation

2   omitted). However, "the court does not reach any ultimate conclusions regarding the contested

3   issues of fact and law that underlie the merits of this litigation." *Id.* (internal citation and

4   quotation marks omitted).

### i.   Failure to Provide Accurate and Itemized Wage Statements

5

6        Plaintiffs allege a single cause of action for failure to provide accurate and itemized wage

7   statement. This claim is based on Labor Code § 226, which generally requires an employer to

8   provide employees with accurate itemized wage statements showing a variety of information

9   (including gross wages earned and total hours worked) and penalizes knowing and intentional

10  failures to do so by permitting recovery of $50 for the initial pay period in which a violation

11  occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an

12  aggregate penalty of $4,000. *See* Cal. Labor code §226. During the class period, Defendant's

13  wage statements separated overtime hours into two distinct overtime categories, "overtime 1.0"

14  and "overtime premium," but these hours constituted the same hours worked. Further, the wage

15  statements provide a "shift differential hours" category, which constitute a premium payment

16  received by employees, but does not indicate separate hours worked. This results in wage

17  statements that present hours that are redundant and do not allow an easy summation of total

    hours worked. (ECF No. 63, p. 23).

18       Regarding risks, Plaintiffs state that Defendant has asserted numerous defenses aimed at

19  restricting the Plaintiff's and Class member's claims and penalties that may be available. (ECF

20  No. 63, p.23). Specifically, Defendant argued that its wage-statement policy complies with the

21  labor code § 226 because even if all hours listed do not add up to the total hours worked, the wage

22  statements accurately provided the total hours worked. (ECF No. 43, pp. 15-19). Furthermore,

23  Plaintiff would have great difficult establishing that violation of Section 226(a) was "knowing

24  and intentional" because Defendant had a reasonable, good-faith belief that the wage statements

25  complied with law and had no indication from employees that there was confusion regarding the

26  hours presented on the wage statement. (ECF No. 43, pp. 19-21). *Naranjo v. Spectrum Security*

27  *Services, Inc.,* 15 Cal. 5th 1056, 1087 (2024) (employer's failure to include meal and rest period

28  premium pay on the wage statements was not "knowing and intentional" because it had a good

1  faith belief that it was not in violation of Labor Code section 226); *Apodaca v. Costco Wholesale*

2  *Corp.,* 2014 WL 2533427, at *3 (C.D. Cal. June 5, 2014) ("Where an employer has a good faith

3  belief that it is not in violation of Section 226, any violation is not knowing and intentional");

4  *Arroyo v. Int'l Paper Co.,* 611 F. Supp. 3d 824, 841-43 (N.D. Cal. 2020) (ruling that employer did

5  not knowingly and intentionally violate section 226(a) in part because it had conducted extensive

6  internal audit, it made changes to increase wage statement's clarity, and employer's payroll

7  compliance specialist declared that "there were never any complaints from" employees "claiming

8  that they did not understand 'Regular Hours' to equal the total hours worked, or claiming that

9  they did not understand their overtime rate"). Finally, Defendant routinely reviewed its wage

10 statements for compliance and, in response to the lawsuit, modified those wage statements to

   comply with the law on February 24, 2024.  (ECF No. 63-1, pp, 8-9).

11        As an initial matter regarding the valuation of penalties Defendant faces, the Court looks

12 Section 226(e), which provides as follows

13        An employee suffering injury as a result of a knowing and intentional failure by an
          employer to comply with subdivision (a) is entitled to recover the greater of all actual
14        damages or fifty dollars ($50) for the initial pay period in which a violation occurs and
          one hundred dollars ($100) per employee for each violation in a subsequent pay period,
15        not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an
          award of costs and reasonable attorney's fees.
16

17 In valuing the claims, Plaintiff estimates that Defendant could face a potential maximum liability

18 of $1,512,650[3]. Plaintiff estimates the actual value of the claim to be approximately $907,590

19 when assuming a 60% chance of success on the merits due to the risks associated in establishing

20 liability at a trial. (ECF No. 63-1, p.8).

21                    **b.  The risk, expense, complexity, likely duration of further litigation,
                           and risks of maintaining class action status throughout trial**
22

23        "Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain

24 results.'" *Munoz v. Giumarra Vineyards Corp.*, 2017 WL 2665075, at *9 (E.D. Cal. June 21,

25 2017). Moreover, "[e]mployment law class actions are, by their nature, time-consuming and

26 expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3 (E.D. Cal May

27 19, 2017).

28 _____
   [3] [$50 x 965] + [$100 x 14,644 pay periods] (ECF No. 63-1, p. 8).

In support of the parties' proposed settlement, Plaintiff believes the class can be certified and that the settlement is fair when factoring in the uncertainty and risks to Plaintiff involved in not prevailing on the single claim and the potential for any appeals. (ECF No. 63, p. 22).

Based on the record evidence, including the discovery so far taken and strengths and weakness of the case, the Court concludes that this consideration weighs in favor of approving the parties' proposed settlement.

### c.  The amount offered in settlement

The amount offered in settlement "is generally considered the most important" factor of any class settlement. *See Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). In determining whether the amount offered in settlement is fair and reasonable, a court compares the proposed settlement amount to the maximum potential amount recoverable through successful litigation. *See In re Mego*, 213 F.3d at 459. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (citation omitted). For complex class action cases, Ninth Circuit has "a strong judicial policy that favors settlements. Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enter. Sec. Lit.*, 47 F.3d 373, 378 (9th Cir. 1995) (internal quotation marks and citation omitted).

### i.  Percentage recovery

If Plaintiff were to prevail on all claims, the estimated potential maximum recovery would be $1,512,650 in penalties. The gross settlement amount of $220,000 is approximately 14.54% of $1,512,650.

Ultimately, the Court finds this recovery reasonable and above other percentages that courts have approved. Numerous courts have held that a gross settlement approximating between 8%-25% of the total estimated liability is reasonable. *In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of

1    pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate

2    depends on the "the difficulties in proving the case");*Bellinghausen v. Tractor Supply Co.*, 306

3    F.R.D. 245, 256 (N.D. Cal. 2015) ("From here, the agreed upon common fund represents between

4    27 percent and 11 percent of the total potential recovery. The Court is satisfied that these numbers

5    are fair."); *Van Ba Ma v. Covidien Holding Inc.,* U.S. Dist. Ct. Case No. 8:12-cv-02161 (C.D.

6    Cal. 2014) (court granted preliminary approval of wage and hour class settlement which obtained

7    only 9.1% of projected damages, given the risks of continued litigation) *Villegas v. J.P. Morgan*

8    *Chase & Co.,* No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)

9    (holding that gross class action settlement of approximately 15% of the potential recovery was

10   fair and reasonable).

11          In reaching this determination, the Court reiterates that "a proposed settlement may be

12   acceptable even though it amounts to only a fraction of the potential recovery that might be

13   available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV,*

     *Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

14   **ii.    Allocation of settlement shares**

15          The Court also considers whether the allocation of the settlement is fair, reasonable and

16   adequate, with it being "reasonable to allocate the settlement funds to class members based on the

17   extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs.*, Inc.,

18   559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).

19          Plaintiff describes the allocation of the settlement shares as follows:

20   The Net Settlement Amount will be available for distribution to Settlement Class
     Members (i.e. Class Members who do not opt-out). See SA §§ A-30, D-7. Settlement
21   Class Members will receive a pro rata share of Net Settlement Amount based on the
     number of wage statements reflecting the payment of overtime and/or shift differential
22   wages each employee received during the Class Period. See id. at § D-7. All Individual
     Settlement Payments will be allocated as one hundred percent (100%) to penalties. See
23   SA § D-8.

24   Based on an estimated Net Settlement Amount of $92,171.67, each Settlement Class
     Member may potentially recover approximately $95.52 or $5.91 per wage statement
25   reflecting the payment of overtime and/or shift differential. See Agnew Decl. ¶ 31. The
     amount any particular Settlement Class Member will be entitled to recover will be greater
26   or lower than this average, depending on the number of overtime and/or shift differential
     wage statements each respective
27

28   (ECF No. 63, p. 16).

1    The Court finds this allocation acceptable.

2    Accordingly, the allocation of settlement payments based on the number of wage

3    statements that were inaccurate during the class period would be fair to the class members and

4    aggrieved employees.

5    ### d.  The extent of discovery completed and the stage of proceedings; experience and views of counsel

6    "An initial presumption of fairness is usually involved if the settlement is recommended

7    by class counsel after arm's-length bargaining." *Riker v. Gibbons*, No. 3:08-CV-00115-LRH,

8    2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 Alba Conte & Herbert B. Newberg,

9    Newberg on Class Actions § 11:42 (4th ed.2002)); *see also Nat'l Rural Telecommunications*

10   *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following

11   sufficient discovery and genuine arms-length negotiation is presumed fair." (citations omitted)).

12   Here, the parties engaged in extensive pre-class certification discovery. (ECF No. 63,

13   p.13). Specifically, discovery topics ranged from information regarding the number of putative

14   class members, Defendant's policies and procedures regarding its wage statements, and

15   depositions of Defendant's Rule 30(b)(6) witness and Plaintiff. (*Id.*). On January 18, 2024, the

16   parties engaged in private mediation but were unable to resolve the matter. (*Id.*). Settlement

17   negotiations resumed on July 26, 2024, and during those negotiations the *Vasquez* matter settled,

18   requiring Plaintiff to dispose of his first and second causes of action, directing the parties to focus

19   on a resolution for violation of Labor Code section 226(a). (ECF No. 63, p.14). Settlement

20   negotiations were conducted at arms-length and in adversarial positions and an agreement on the

     material terms of a settlement were reached on February 21, 2025. (*Id.*).

21   Finally, Plaintiff's counsel provided declarations, generally summarizing the experience

22   with class action litigation and stating that the settlement is fair and reasonable and in the best

23   interests of the those concerned. (ECF No. 63-1, p. 9).

24   Accordingly, this factor weighs in favor of approval.

25   ### e.  The reaction of the class members to the proposed settlement

26   At this stage, the reaction of the class members to the proposed settlement is unknown, so

27   this factor cannot be addressed.

28   \\\

1

2.  **Collusion (*Bluetooth* Factors)**

2      "The potential for collusion reaches its apex pre-class certification because, among other

3  things, (1) the court has not yet approved class counsel, who would owe a fiduciary duty to the

4  class members; and (2) plaintiffs' counsel has not yet devoted substantial time and money to the

5  case, and may be willing to cut a quick deal at the expense of class members' interests." *Briseño*,

6  998 F.3d at 1024.

7      The Court now turns to the *Bluetooth* factors, which are indications courts evaluate to

8  determine whether class counsel have allowed their own interests to infect settlement

9  negotiations— (1) whether counsel receives a disproportionate amount of the settlement; (2)

10  whether there is a clear "sailing agreement"; (3) and whether the agreement contains a "kicker" or

11  "reverter" clause. *Briseño*, 998 F.3d at 1024. The Court "ha[s] an independent obligation to

12  ensure that the award, like the settlement itself, is reasonable, even if the parties have already

13  agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*,

14  192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund,

15  the relationship between the class members and class counsel "turns adversarial." *In re*

16  *Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result,

17  the Court must assume a fiduciary role for the class members in evaluating a request for an award

18  of attorneys' fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968

19  (9th Cir. 2009).

20      The Ninth Circuit has approved two methods for determining attorneys' fees in cases

21  where the award is taken from the common fund set aside for the entire settlement: the

22  "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290

23  F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The Court retains discretion in common fund

24  cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822

25  SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach,

26  "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it

27  yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance*

28  *Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

      Under the percentage of the fund method, the Court may award class counsel a given

percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award, is the "benchmark" amount of attorneys' fees, but courts may adjust this figure if the record shows special circumstances justifying a departure. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942. In evaluating a percentage for attorneys' fees, the Court is required to "consider[] all the circumstances of the case and reach a reasonable percentage." *Vizcaino*, 290 F.3d at 1048. Such circumstances include (1) the results reached for the class; (2) the risk to class counsel; (3) counsel's performance; and (4) the amount sought to be awarded compared to the market rate. *Id.* at 1048-49.

Here, Defendant's counsel will not oppose or impede any application or motion by Plaintiff's counsel for attorney fee's not to exceed $73,333.33 (or approximately 33%) of the gross settlement. (ECF No. 63, p.16). Additionally, the settlement agreement caps costs at $30,000, subject to this Court approving the settlement. (*Id.*).

Plaintiff generally indicates that the fee award is warranted based on significant benefits that Plaintiff and Class Counsel have conveyed upon the class. The Court finds that the requested attorneys fees fall within the range of reasonableness warranting preliminary approval of the settlement but will reserve a final determination for final approval, with the benefit of further briefing and consideration. The Court notes that 33% request is higher than typically awarded. However, the Court recognizes that this case lost the potential for a significant award due to the *Vasquez* action, which caused two of the three causes of action to be barred.

Next, the proposed settlement contains a clear sailing provision, *i.e.*, a provision that Defendants will not object to a certain fee request. Notably, it states that Defendants will not oppose a fee award that does not exceed 1/3 of the settlement and will not oppose costs that do not exceed $30,000 (ECF No. 63, p. 16). However, there is no "reverter" clause, *i.e.*, a provision that fees not awarded revert to Defendant rather than the class fund. Rather, the settlement agreement expressly states that "Any portion of the requested attorney fees' and/or costs not approved by the Court shall be added to the Net Settlement Amount." (ECF No. 63-1, p.22).

The Court concludes that this factor weighs in favor of preliminary approval.

1

### 8.   Class representative service payment

2        A court may award incentive payments to named plaintiffs in class action cases.

3   *Rodriguez*, 563 F.3d at 958-59. The purpose of incentive awards is to "compensate class

4   representatives for work done on behalf of the class, to make up for financial or reputational risk

5   undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a

6   private attorney general."  *Id.* To justify notable disparities between a class representative award

7   and what other class members receive, a Plaintiff must present "evidence demonstrating the

8   quality of plaintiff's representative service," such as "substantial efforts taken as class

9   representative to justify the discrepancy between [his] award and those of the unnamed

10   plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).

11        The Ninth Circuit has emphasized, however, that "district courts must be vigilant in

12   scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc*., 715 F.3d 1157, 1165

13   (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition,

14   courts have declined to approve incentive awards that represent an unreasonably high proportion

15   of the overall settlement amount or are disproportionate to the recovery of other class members.

16   *See Ontiveros*, 303 F.R.D. at 365-66 (finding an incentive award of $20,000, comprising 1% of

17   the common fund, to be excessive under the circumstances, and reducing the award to $15,000,

18   where class representative spent 271 hours on the litigation and relinquished the opportunity to

19   bring several of his own claims in order to act as class representative)*; see also Ko v. Natura Pet

20   Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012)

21   (holding that an incentive award of $20,000, comprising one percent of the approximately $2

22   million common fund was "excessive under the circumstances" and reducing the award to

23   $5,000). In reducing an award, courts have noted that overcompensation of class representatives

24   could encourage collusion by causing a divergence between the interests of the named plaintiff

25   and the absent class members, destroying the adequacy of class representatives. *See Staton*, 327

26   F.3d at 977-78; *see also Radcliffe*, 715 F.3d at 1165.

27        Here, the settlement agreement provides for an "enhancement payment," up to $12,500

28   intended to compensate named Plaintiff and in exchange for execution of a general release of all

claims, including a waiver under California Civil Code § 152. (ECF No. 63, p.15). However,

neither the motion, nor declarations of defense counsel or Plaintiffs provide specific support for this especially high incentive award.

Moreover, the proposed payment represents about 18% of the gross settlement amount ($12,500 / $220,000). This amount is well over 100 times the average $92.52 estimated to go to the average class member. And the Court notes that the requested award is higher than the $5,000 incentive award that has been recognized as "presumptively reasonable" by some courts. *Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG, 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019).

The Court cannot fully evaluate the incentive reward request based on the information provided. However, it will preliminarily approve the settlement and address the request further after considering to-be-filed briefing on this issue.

**9.      Approval of a settlement administrator**

The parties agree to use third-party settlement administrator Phoenix Settlement Administrators ("Phoenix") with an estimated $11,995.00 in costs and any portion of the costs not used or approved by the Court shall revert to the Net Settlement Amount. (ECF No. 63, p. 15). According to Plaintiff's counsel, Phoenix has "substantial experience in administering class action settlements." (*Id.,* p. 26). The Court finds Phoenix Settlement Administrators is an appropriate settlement administrator should the settlement be eventually approved.

**10.      Notice procedures**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC*, 361 F.3d at 575 (internal quotations and citations omitted). The absent class members must be provided with notice, an opportunity to be heard, and a right to opt-out of the class. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011). "The notice must clearly and concisely state in plain, easily understood language" the following information:

the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance

21

through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The contents of the notice that Plaintiffs propose includes the following:

(1) the material terms of the settlement and a brief explanation of the case; (2) the proposed attorneys' fees, litigation expenses, and the costs of administration; (3) a statement that the court will exclude the Class Member from the class if the member so requests by a specified date; (4) a procedure for the Class Member to follow in requesting exclusion from the class; (5) a statement that the judgment will bind all Class Members who do not request exclusion; and (6) a statement that any Class Member who does not request exclusion may, if the Class Member so desires, enter an appearance through counsel; and (7) how Class Members can obtain additional information. In addition, the Notice will inform Class Members of their estimated settlement shares.

(ECF No. 63-1, pp.39-44).

The Court finds the proposed notice acceptable.

## IV.    CONCLUSION AND ORDER

Based on the forgoing, IT IS ORDERED as follows:

1. Plaintiff's motion for class certification and preliminary approval (ECF No. 63) is GRANTED.

2. The following settlement class is conditionally certified: All non-exempt employees of Leprino Foods Company who performed work in California from October 17, 2023 through February 24, 2024.

3. Plaintiff Christopher Dominguez is conditionally approved as the class representative for the settlement class.

4. Kristen Agnew, Larry Lee, Max Gavron, and Kwanporn "Mai" Tulyathan of Diversity Law Group, P.C. are conditionally approved as class counsel for the settlement class.

5. The Court conditionally approves Phoenix Settlement Administrators as the settlement administrator and payment of $11,995.000 to it as costs.

6. The Court approves, and authorizes the issuance of, the notice (as submitted to the Court) and the parties shall implement the notice schedule set forth in the settlement agreement.

7. A final approval hearing is scheduled for February 19, 2026, at 10:30 a.m. before

Magistrate Judge Erica P. Grosjean, in Courtroom 10 on the 6th Floor of the Robert E. Coyle United States Courthouse. Alternatively, the parties and their counsel may participate telephonically. To connect to the conference via telephone, the parties shall (1) dial 1-669-254-5252, (2) enter 161 733 0675 for the meeting ID followed by #, (3) enter # when asked for the participant ID, (4) enter 740484 for the meeting passcode followed by #, and (5) enter *6 to unmute.

8. A combined motion for final approval of the settlement, the class incentive award, and an award of attorney fees and costs shall be filed by no later than January 29, 2026.

9. The settlement administrative shall file a report regarding the outcome of the notice process by no later than January 29, 2026.

IT IS SO ORDERED.

Dated: __**October 9, 2025**__        /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE