UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DOMINGUEZ, *as an individual and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>LEPRINO FOODS COMPANY, *a Colorado corporation*,<br><br>Defendants. | Case No.   1:22-cv-01018-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS CERTIFICATION AND APPROVAL OF A CLASS ACTION SETTLEMENT BE GRANTED IN PART<br><br>(ECF No. 75) |

The parties, Plaintiff Christopher Dominguez and Defendant Leprino Foods Company, have reached a settlement in this putative class action case that alleges a violation of California Labor Code section 226(a)(2). Before the Court is Plaintiff's unopposed motion to certify the settlement class and issue an approval of the parties' settlement. (ECF No. 75).

Upon review of Plaintiff's motion, the record, and the May 21, 2026 hearing, the Court recommends granting the motion in part. (ECF No.75).[1]

\\\

\\\

\\\

---

[1] The district judge referred Plaintiff's motion for Final Approval of Class Action Settlement to the undersigned for preparation of findings and recommendations pursuant to 28 U.S.C section 636(b) (ECF No. 75).

1

## I.    BACKGROUND

### A.  Procedural History

On June 28, 2022, Plaintiff initiated this action by filing a class action complaint in California Superior Court for the County of Kings. (ECF No. 1-1). Defendant removed the case to the United States District Court for the Eastern District of California on August 12, 2022. (ECF No. 1, p. 9).

Pursuant to a stipulation of the parties, Plaintiff filed his First Amended Complaint on February 14, 2024. (ECF Nos. 31).

On March 29, 2024, Plaintiff filed a motion for class certification. (ECF No. 41). Defendant filed an opposition to Plaintiff's class certification motion on May 24, 2024. (ECF No. 43). On June 14, 2024, Plaintiff filed a reply to Defendant's opposition (ECF No. 44). Defendant filed a request for leave to file a sur-reply on June 20, 2024. (ECF No. 45). The Court held a hearing on the motion for class certification on July 12, 2024. (ECF No. 48).

On July 26, 2024, while the motion for class certification was pending, Defendant filed a Notice of Related Cases identifying the settled action of *Vazquez, et al. v. Leprino Foods Company, et al.,* in the United States District Court for the Eastern District of California, Case No: 1:17-cv-00796-JLT-BAM. (ECF No. 53). In *Vasquez,* there was a Court-approved settlement that released "claims for alleged violations of California Labor Code sections 201, 202, 203, 204, 210, 218, 218/5, 218/6, 225.5, 226, 226.3, 226.6, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197.1, 1198, and 2699" during the period from November 15, 2009, through October 16, 2023. (ECF No. 63, p. 14).  According to the parties, this settlement resulted in a bar of Plaintiff's first and second causes of action alleged in the First Amended Complaint.

On January 3, 2025, the undersigned issued Findings and Recommendations Recommending that Plaintiff's Motion for Class Certificated Be Granted. (ECF No. 56). Defendant timely filed objections. (ECF No. 57).

On or about February 21, 2025, the parties reached an agreement on the material terms of the settlement and Plaintiff subsequently filed a motion for Preliminary Approval of Class Action Settlement (ECF No. 63, p. 14). As condition of the proposed settlement, the Parties agreed to file a Second Amended Complaint. (*Id.,* p. 14).

Plaintiff filed the Second Amended Complaint on May 8, 2025.  (ECF No. 68).  Plaintiff's Second Amended Complaint alleges a single cause of action for violation of California Labor Code § 226(a). (ECF No. 68). Plaintiff alleged Defendant failed to provide accurate itemized wage statements because, as the Plaintiff and Class were hourly non-exempt employes, the wage statements should have accurately reflected the total hours worked, whereas Defendant's wage statements issued to Plaintiff and the Class failed to accurately identify and itemize this information, in violation of California Labor Code § 226(a). (*Id.* at 7).

On April 24, 2025, Plaintiff filed an unopposed Motion for Preliminary Approval of a Class Settlement (ECF No. 63). Plaintiff asked that the Court grant certification of the proposed class for settlement purposes only and make other orders to facilitate final approval and settlement of the class claims in the Second Amended Complaint. The following table shows the key terms of the parties' proposed settlement, which covered a class consisting of  "all current and former non-exempt employees of [Defendant] in the State of California who received payment of overtime and/or shift differential wages, at any time from October 17, 2023, to February 24, 2024." (*Id.* at 14).  The Gross Settlement Amount ("GSA") is $220,000. The GSA is premised on Defendant's representation that Class Members received approximately 15,609 wage statements reflecting the payment of overtime and/or shift differential wages during the Class Period. The approximate dollar value of each wage statement is $14.09. (*Id.* at 15). The agreement proposes that the gross settlement amount be allocated as follows:

|  | Settlement Allocation |
| --- | --- |
| Gross Settlement Amount (GSA) | $220,000 |
| Enhancement Payment Not to Exceed | $12, 500 |
| Litigation Costs Not to Exceed | $30,000 |
| Administrator Costs Not to Exceed | $11, 995 |
| Attorney Fees Not to Exceed | $73,333.333 |
| **Expected Net Settlement Amount for Estimated 965 Members** | **$92, 171.67** |

3

(*Id.* at 15-16).

Under the proposed settlement, Settlement Class members would receive a pro rata share of the Net Settlement Amount based on the number of wage statements reflecting the payment of overtime and/or shift differential wages each employee received during the Class Period. (ECF. *Id.* at 16). Based on this pro rata share, each Settlement Class Member may recover approximately $95.52 or $5.91 per wage statement. (*Id.*). The amount recovered by a Settlement Class member may be greater or lower than the average depending on the number of overtime and/or shift differential wage statements each respective Class Member received during the Class Period and the number of classes opt-outs received. (*Id.*).

In support of the motion for preliminary approval, Plaintiff provided his declaration, the declarations of Plaintiff's counsel, Jodey Lawrence the President of Phoenix Class Action Administrator Solutions (Settlement administrator), the parties' proposed settlement agreement, and the proposed class notice. (ECF Nos. 63-1, 63-2, 63-3, 63-4, 63-5, 63-6, 63-7).

On August 22, 2025, the district judge accepted the parties' limited consent for the undersigned to adjudicate Plaintiff's Motion for Preliminary Approval of Class Action Settlement. (ECF No. 71). The Court held hearing on the motion on September 18, 2025. (ECF No. 73). On October 9, 2025, the Court granted Plaintiff's motion for preliminary approval of class certification and of the class action settlement and set a final approving hearing for February 19, 2026. (EFC No. 74).

On January 29, 2026, the Plaintiff filed a motion for final approval of the class action settlement and on January 30, 2026, the district judge referred the motion to the undersigned for preparation of findings and recommendations. (ECF Nos. 75, 76). The motion for final approval is supported by declarations of Plaintiff and Plaintiff's counsel, Case Manager at Phoenix Settlement Administrators Taylor Mitzner, and the Notice of Class Action Settlement. (ECF Nos. 75, 75-1, 75-2, 75-3, 75-4, 75-5, 75-6, 75-7).

The Court held the final approval hearing on May 21, 2026. Counsel for both parties were present. There were no objections filed with the Court or raised at the final approval hearing.

\\\

\\\

4

### B. Overview of the Settlement Agreement

#### 1. Settlement class and class period; aggrieved employees and scope of release of claims

The settlement class covers "all current and former non-exempt employees of [Defendant] in the State of California who received payment of overtime and/or shift differential wages, at any time from October 17, 2023, to February 24, 2024." (ECF Nos. 63 at 14, 75 at 14). The settlement class excludes Sam Cam, who submitted a Request for Exclusion. (ECF No. 75 at 14 citing 75-2 ¶ 7). There are 1,531 Settlement Class Members. (ECF No. 75 at 14).

The Settlement Class is releasing Leprino and the Released Parties from the Released Claims that accrued during the Class Period. As defined in the Settlement Agreement, Released Claims means:

> [A]ll claims, rights, demands, liabilities, actions, damages, causes of action, and charges of whatever nature, under state, federal, or local law, alleged in the Operative Complaint, or that could have been alleged based on the factual allegations pleaded in the Operative Complaint, including but not limited to, for violation of California Labor Code section 226.

(*Id.*). The Released Claims were narrowly tailored to track the claims alleged in the Operative Complaint and do not include a Civil Code section 1542 waiver. The Released Claims also does not include a waiver of claims brought under PAGA. (*Id.* at 15).

#### 2. Terms of the settlement agreement

The "gross settlement amount" ("GSA") that Defendant will pay to settle this case is $283,970.00. The Settlement Agreement contemplated a GSA of $220,000, that amount was premised on Defendant's representation that Class Members received approximately 15, 609 wage statements reflecting the payment of overtime and/or shift differential wages during the Class Period. However, as part of the notice process, Defendant confirmed there were 21,709 wage statements at issue, which increased the GSA by $63, 976.00. (*Id.*).

The Net Settlement Amount, or the amount remaining after deduction of attorneys' fees, costs, Enhancement Payment and Settlement Administration costs, is $141, 032.91. The settlement is non-revisionary, meaning no funds of the Net Settlement Amount will revert back to Defendant. (*Id.*). The following table reflects the deductions from the GSA to form the settlement amount.

| GROSS SETTLEMENT AMOUNT | $283,976 |
|---|---|
| Attorney's Fees (33% of GSA) | $94,658.66 |
| Litigation Costs | $23,789.43 |
| Administrator Costs | $11,995 |
| Enhancement Pay to Plaintiff | $12,500 |
| **Expected Net Settlement Amount** | **$141, 032.91** |

(*Id.* at 15-16).

On average, each Settlement Class Member will receive a payment of approximately $92.12. The highest individual settlement payment will be approximately $129.99. Any remaining uncashed checks will be paid to the California State Controller's Office in the name of the Qualified Claimant. (*Id.* at 15).

No claim forms were necessary for any Class Member to participate in the settlement. As such, any Class Member who did not opt-out will automatically receive a share of the Net Settlement Amount. (*Id.*).

## II.    SERVICE OF THE CLASS NOTICE

When the Court granted Plaintiff's motion for preliminary approval, it authorized the issuance of the class notice. (*Id.* at 17). Furthermore, the preliminary approval order specified that all Class Members be sent the Class Notice by first class mail and that Phoenix would serves as the Settlement Administrator. (*Id.*)

In the declaration of Taylor Mitzner, an administrator for Phoenix, notice was provided to Class Members. Specifically, Plaintiff's motion states:

> On October 24, 2025, the Settlement Administrator received a data file from Defense Counsel that contained names, last known mailing addresses, Social Security numbers, and applicable wage statement count for each Class Member during the Class Period. See Admin. Decl. ¶ 3. The final mailing list contained 1,532 individuals identified as Class Members. See id. Prior to mailing the Class Notice, the Settlement Administrator conducted a National Change of Address ("NCOA") search to correct and/or update the Class List in case of any address changes. See id. at ¶ 4. On November 10, 2025, the Settlement Administrator mailed the Class Notice to all Class Members on the mailing list via U.S. first class mail. See id. at ¶ 5. From the date of mailing, zero (0) Class Notices were returned to the Settlement Administrator due to incorrect addresses. See id. at ¶ 6.

6

Further, the Class Notice provided Class Members with Class Counsel's and the Settlement Administrator's contact information, where they could further seek information regarding the settlement, ask questions, review pleadings in the case, and update their address. See id. at ¶ 5, Ex. A.

The provision of sending the notice to class members as described above meets the requirements for the "best notice practicable" in this case as necessary to protect the due process rights of class members. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

(*Id.* at 17-18).

III.    **LEGAL STANDARDS FOR CLASS CERTIFICATION AND SETTLEMENT AND APPROVAL**

A court tasked with determining whether to approve a proposed class action settlement will almost always be confronted with a "difficult balancing act." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "On the one hand, . . . there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Id*. (internal quotation marks and citations omitted). "But on the other hand, settlement class actions present unique due process concerns for absent class members, and the district court has a fiduciary duty to look after the interests of those absent class members." *Id.* (internal quotation marks and citations omitted). "To ensure the interests of the absent class members are properly safeguarded, the judge must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation." *Lusk v. Five Guys Enterprises LLC*, No. 1:17-CV-00762-AWI-EPG, 2021 WL 2210724, at *2 (E.D. Cal. June 1, 2021) (internal quotation marks and citation omitted).

Class actions are governed by Federal Rule of Civil Procedure 23. There are two stages to approval of a class action settlement. In the first stage, "the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The Court completed this stage and issued an order preliminarily certifying the class and approving the

7

settlement on October 9, 2025. (ECF No. 74).

At the second stage, the Court holds a fairness hearing, entertaining objections from putative class members, and thereafter making "a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon." *Id.*

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b)," with Plaintiffs arguing here that, under Rule 23(b)(3), common questions of law or fact predominate over individual class member questions and that a class action is superior to other methods for fairly and efficiently adjudicating this case. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017); (ECF No. 253-1, p. 20). Plaintiff bears the burden of meeting these requirements. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).

After the certification inquiry, the Court considers whether the settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (describing factors guiding inquiry under Rule 23(e)(2)).

The Court will evaluate the settlement agreement "as a whole" and "for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The Court does "not have a duty to maximize settlement value for class members," but instead, the "inquiry is much more modest and limited to ensuring that the class settlement is fair, reasonable, and adequate." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025). Relatedly, the Court does not "have the ability to delete, modify or substitute certain provisions"; rather, "[t]he settlement must stand or fall in its entirety." *Id.* (internal citation and quotation marks omitted).

## IV.    ANALYSIS

The Court will begin with the Rule 23(a) factors regarding class certification and then turn to the Rule 23(e) factors regarding approval of the settlement.

### A.  Rule 23(a) Requirements

#### 1.  Numerosity

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members

8

is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Courts in the Ninth Circuit have found the requirement satisfied when the class is composed of as few as thirty-nine members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-four, and seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810, 103 (1982)).

Here, joinder of the 1,531 class members as plaintiffs would be impracticable. (ECF No. 75 at 14). Furthermore, the proposed Class is ascertainable because all proposed members have been employed by Defendant and can be easily identified through Defendant's employee and payroll records. (*Id.*). Thus, the Court finds the numerosity requirement satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Class members need not "have all suffered a violation of the same provision of law"; rather, their claims must "depend upon a common contention." *Dukes*, 564 U.S. at 350. The "common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

The claims here are based on Defendant's alleged failure to provide accurate itemized wage statements that complied with California Labor Code section 226. (ECF No. 63 at 18, citing ECF Nos. 63-1, ¶ 34; 63-4, ¶ 3). As such, the claims of Plaintiff and the Class stem from the same factual and legal issues and as a result, the Court finds the commonality requirement satisfied. *See Kincaid v. Educ. Credit Mgmt. Corp., Inc.*, No. 2:21-CV-00863-TLN-JDP, 2024 WL 1344595, at *4-10 (E.D. Cal. Mar. 29, 2024) (finding commonality requirement met for similar Labor Code

claims); *Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-CV-00606-DAD-EPG, 2017 WL 3173006, at *6 (E.D. Cal. July 26, 2017) (same).

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Ninth Circuit has explained, "[t]he test of typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Jones v. Shalala*, 64 F.3d 510, 514 (9th Cir. 1995) (citing *Hanon*, 976 F.2d at 508).

While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here, as Plaintiff notes, his claims are typical of the claims of other Class members because they arise from the same facts and are predicated upon the same legal theories. (ECF No. 63 at 19, citing ECF Nos. 63-1, ¶ 34; 63-4, ¶ 3). The Court finds the typicality requirement satisfied.

### 4. Adequacy of representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations omitted). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

Plaintiff contends and Defendant offers no dispute that for settlement purposes, Plaintiff and his counsel are adequate representatives of the Class. (ECF No. 63 at 19). Specifically, it is represented that Plaintiff has been committed to pursuing this action on behalf of the Class by "locating and retaining attorneys, filing this [a]ction and willingly exposing his name and reputation to criticism, participating in discovery and investigation, appearing at deposition, and reviewing the settlement documents with counsel." (*Id.*). Furthermore, Plaintiff contends that his interests in pursuing this action and obtaining the most beneficial recovery possible are in the

interests of the entire class. Additionally, Plaintiff argues that any class member who wishes to opt-out or object to the settlement had the opportunity to do so. (*Id.*).

Further, Plaintiff states that Plaintiff's counsel has no conflicts of interest that have arisen, and counsel is committed to the case and has experience in litigating similar cases, supported by certifications by numerous state and federal courts as competent and adequate class counsel. (ECF No. 63 at 19). Additionally, the Court notes that "[t]he competence of counsel seeking to represent a class" may be evaluated by considering whether they "are labor lawyers experienced in class actions." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Subsequently, Plaintiff's counsel has provided declarations supporting their experience by listing numerous class action cases they have been involved in. (ECF Nos. 63-1 ¶ 38; 63-2 ¶ 7; 63-3, ¶¶3-8; 63-5, ¶ 10; 63-6 ¶¶ 8-9). Accordingly, the Court finds the adequacy requirement satisfied.

### B. Rule 23(b) Requirements

Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); (ECF No. 22, p. 24). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623-24).

### 1. Predominance

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear

justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed.1986)).

Here, there are issues that will predominate over individual issues in the case, specifically whether Defendant's wage statements violated California law because they were not accurate nor itemized correctly. As such, "[a] common nucleus of facts and potential legal remedies dominates this litigation," the Court finds that the predominance requirement is met. *Hanlon*, 150 F.3d at 1022.

### 2. Superiority

Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Pertinent to this finding is: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.; see Amchem*, 521 U.S. at 616. The purpose of this "requirement is to assure that the class action is the most efficient and effective means of resolving the controversy," and "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted); *see Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("This case involves multiple claims for relatively small individual sums. . . . If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

The Court concludes that a class action is a superior method of resolving this action. First, it does not appear economical for each individual member of the proposed 1,531 member class to bring their claims separately. The class action litigation here allows the class members to pool their individual claims together, which claims would otherwise not be economical to litigate. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sand*s, 244 F.3d 1152, 1163

12

(9th Cir. 2001) ("This case involves multiple claims for relatively small individual sums. . .. If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). Further, a lack of knowledge of the legal system and limited economic resources would likely deprive most class members of the opportunity to pursue their claims outside of a class action. Finally, any prospective class member that wishes to pursue their own case had the opportunity to opt out of the class.

Second, there does not appear to be any related pending litigation.

Third, this District is a desirable forum for the litigation as the operative complaint alleges that Plaintiff primarily performed his work for Defendant within the City of Lemoore and County of Kings. (ECF No. at 3-4). Thus, much of the evidence will likely be found within this District and the Court can efficiently conduct proceedings here. *See Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 486 (N.D. Cal. 2017) ("This case involves drivers who serviced routes in Northern California, many of whom worked out of Flowers warehouses in San Jose and Salinas, which are in this District. Because much of the evidence will be found here, it would be efficient to try the case here."). Finally, there are no apparent difficulties likely to be encountered in managing this class action. Thus, the Court finds that the superiority requirement is met.

### C.      Rule 23(e) Requirements

If a proposed settlement agreement "would bind class members," the Court must find that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit has provided the following guidance regarding Rule 23(e)(2):

> In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors," viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Kim*, 8 F.4th at 1178 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing the *Churchill* factors). "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego*, 213 F.3d at 458. "This list is not exclusive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citations omitted).

Moreover, consideration of these factors alone is insufficient. *Id.* at 1179. Because Rule 23(e)(2) also requires courts to "now consider 'the terms of any proposed award of attorney's fees' when determining whether 'the relief provided for the class is adequate[,]' . . . courts must balance the 'proposed award of attorney's fees" vis-à-vis the 'relief provided for the class in determining whether the settlement is 'adequate' for class members." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). This is done by reviewing the "so-called *Bluetooth* factors to smoke out potential collusion." *Id.* at 1023. Signs of such collusion include:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Id.* (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947).

The Court will begin with the *Churchill* factors to determine if the proposed settlement aligns with Rule 23(e)(2) and then move to the *Bluetooth* factors, to determine if there are any signs of potential collusion.

\\\

\\\

14

## 1. *Churchhill Factors*

### a. The strength of Plaintiff's case

A court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 975 (E.D. Cal. 2012) (citation omitted). However, "the court does not reach any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *Id.* (internal citation and quotation marks omitted).

### i. Failure to Provide Accurate and Itemized Wage Statements

Plaintiffs' operative complaint asserts a single cause of action for failure to provide accurate and itemized wage statements. This claim is based on Labor Code § 226, which generally requires an employer to provide employees with accurate itemized wage statements showing a variety of information (including gross wages earned and total hours worked) and penalizes knowing and intentional failures to do so by permitting recovery of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000. *See* Cal. Labor code §226. During the class period, Defendant's wage statements separated overtime hours into two distinct overtime categories, "overtime 1.0" and "overtime premium," but these hours constituted the same hours worked. Further, the wage statements provide a "shift differential hours" category, which constitute a premium payment received by employees, but does not indicate separate hours worked. This results in wage statements that present hours that are redundant and do not allow an easy summation of total hours worked. (ECF No. 75 at 19).

Regarding risks, Plaintiffs state that Defendant has asserted numerous defenses aimed at restricting the Plaintiffs' and Class member's claims and penalties that may be available. (*Id.*). Specifically, Defendant argued that its wage-statement policy complies with the labor code § 226 because even if all hours listed do not add up to the total hours worked, the wage statements accurately provided the total hours worked. (ECF No. 43 at 15-19; ECF No. 75 at 19). Furthermore, Plaintiff would have great difficulty establishing that violation of Section 226(a) was "knowing and intentional" because Defendant had a reasonable, good-faith belief that the

wage statements complied with law and had no indication from employees that there was confusion regarding the hours presented on the wage statement. (ECF No. 43 at 19-21; ECF No. 75 at 19). *Naranjo v. Spectrum Security Services, Inc.,* 15 Cal. 5th 1056, 1087 (2024) (employer's failure to include meal and rest period premium pay on the wage statements was not "knowing and intentional" because it had a good faith belief that it was not in violation of Labor Code section 226); *Apodaca v. Costco Wholesale Corp.,* 2014 WL 2533427, at *3 (C.D. Cal. June 5, 2014) ("Where an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional"); *Arroyo v. Int'l Paper Co.,* 611 F. Supp. 3d 824, 841-43 (N.D. Cal. 2020) (ruling that employer did not knowingly and intentionally violate section 226(a) in part because it had conducted extensive internal audit, it made changes to increase wage statement's clarity, and employer's payroll compliance specialist declared that "there were never any complaints from" employees "claiming that they did not understand 'Regular Hours' to equal the total hours worked, or claiming that they did not understand their overtime rate"). Finally, Defendant routinely reviewed its wage statements for compliance and, in response to the lawsuit, modified those wage statements to comply with the law on February 24, 2024.  (ECF No. 43 at 19-21; ECF No. 75 at 20).

### b.  The risk, expense, complexity, and likely duration of further litigation,

"Approval of settlement is 'preferable to lengthy and expensive litigation with uncertain results.'" *Munoz v. Giumarra Vineyards Corp.*, 2017 WL 2665075, at *9 (E.D. Cal. June 21, 2017). Moreover, "[e]mployment law class actions are, by their nature, time-consuming and expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3 (E.D. Cal May 19, 2017).

In light of Defendant's various defenses, Plaintiff argues that there would be an appreciable risk that penalties would not been recovered on behalf of the Class at trial. (ECF No. 75 at 20). Moreover, even if Plaintiffs were successful at trial, there was a likelihood that Defendant would appeal the verdict. As such, the Court finds that the risks, expenses, and duration of continued litigation favor final approval of the settlement. "Difficulties and risks in litigating weigh in favor of approving a class settlement." Dyer v. Wells Fargo Bank, N.A., 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (Without a settlement, Plaintiffs would risk

16

recovering nothing after a lengthy and costly litigation).

Based on the foregoing, including the preliminary approval of the settlement and the strengths and weakness of the case, the Court concludes that this consideration weighs in favor of approving the parties' proposed settlement.

### c.   The amount offered in settlement

The amount offered in settlement "is generally considered the most important" factor of any class settlement. *See Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). In determining whether the amount offered in settlement is fair and reasonable, a court compares the proposed settlement amount to the maximum potential amount recoverable through successful litigation. *See In re Mego*, 213 F.3d at 459. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (citation omitted). For complex class action cases, Ninth Circuit has "a strong judicial policy that favors settlements. Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enter. Sec. Lit.*, 47 F.3d 373, 378 (9th Cir. 1995) (internal quotation marks and citation omitted).

### i.   Percentage recovery

Class counsel estimates the total penalties to be approximately $2,094,300[2]. As such, the settlement of $283,976.00 is about 13.559% of the total estimated liability and approximately $13,08 per wage statement at issue. (ECF No. 75 at 21).

Ultimately, the Court finds this recovery still reasonable and above other percentages that courts have approved. Numerous courts have held that a gross settlement approximating between 8%-25% of the total estimated liability is reasonable. *In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate

---

[2] ([$50 x 1,532 pay periods] + [$100 x 20, 177 pay periods]). (ECF No. 75-1 at 6, ¶21).

depends on the "the difficulties in proving the case");*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) ("From here, the agreed upon common fund represents between 27 percent and 11 percent of the total potential recovery. The Court is satisfied that these numbers are fair."); *Van Ba Ma v. Covidien Holding Inc.,* U.S. Dist. Ct. Case No. 8:12-cv-02161 (C.D. Cal. 2014) (court granted preliminary approval of wage and hour class settlement which obtained only 9.1% of projected damages, given the risks of continued litigation) *Villegas v. J.P. Morgan Chase & Co.,* No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (holding that gross class action settlement of approximately 15% of the potential recovery was fair and reasonable).

In reaching this determination, the Court reiterates that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

### ii. Allocation of settlement shares

The Court also considers whether the allocation of the settlement is fair, reasonable and adequate, with it being "reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs.*, Inc., 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).

> Plaintiff describes the allocation of the settlement shares as follows:
> The Net Settlement Amount of $141,032.91 available to pay Settlement Class Members was determined by subtracting the requested Class Counsel attorneys' fees ($94,658.66), and Class Counsel costs ($23,789.43), requested Enhancement Payment to Plaintiff Dominguez (ECF No. 63, p. 16). ($12,500.00), and the requested Settlement Administration Costs ($11,995.00) from the Gross Settlement Amount ($283,976.00). Based upon the calculations stipulated in the Settlement, the highest Individual Settlement Share to be paid is approximately $129.99, the lowest Individual Settlement Share to be paid is approximately $6.50, while the average Individual Settlement Share to be paid is approximately $92.12.

(ECF No. 75-2 at 3-4).

The Court finds that this allocation is acceptable.

Accordingly, the allocation of settlement payments based on the number of wage statements that were inaccurate during the class period would be fair to the class members and aggrieved employees.

**d.   The extent of discovery completed and the stage of proceedings; experience and views of counsel**

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:42 (4th ed.2002)); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (citations omitted)).

Here, the parties engaged in extensive pre-class certification discovery. (ECF No. 63 at 13). Specifically, discovery topics ranged from information regarding the number of putative class members, Defendant's policies and procedures regarding its wage statements, and depositions of Defendant's Rule 30(b)(6) witness and Plaintiff. (*Id.*). On January 18, 2024, the parties engaged in private mediation but were unable to resolve the matter. (*Id.*). Settlement negotiations resumed on July 26, 2024, and during those negotiations the *Vasquez* matter settled, requiring Plaintiff to dispose of his first and second causes of action, directing the parties to focus on a resolution for violation of Labor Code section 226(a). (ECF No. 63 at 14). Settlement negotiations were conducted at arms-length and in adversarial positions and an agreement on the material terms of a settlement were reached on February 21, 2025. (*Id.*).

Finally, Plaintiff's counsel provided declarations, generally summarizing the experience with class action litigation and stating that the settlement is fair and reasonable and in the best interests of the those concerned. (ECF Nos. 75-1, 75-3, 75-4, 75-5, 75-6).

Accordingly, this factor weighs in favor of approval.

**e.   The reaction of the class members to the proposed settlement**

When addressing the reaction of class members to a proposed settlement, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

The settlement administrator states that no one has objected to the settlement and only one class member opted out of the settlement.  This results in a 99.93 % participation rate for the Class. (ECF No. 75-2 at 3, ¶6-8). These factors strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun-Hoon*, 716 F.Supp.2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

Accordingly, this factor weighs in approval.

### f.   The presence of a government participant.

Under 28 U.S.C. § 1715(b), the Class Action Fairness Act (CAFA) requires notice of a proposed class action settlement, and certain documents, to be served by each participating defendant on appropriate state and federal officials not later than 10 days after the filing of a proposed settlement.[3] *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1075 (9th Cir. 2017) (noting this requirement). The Ninth Circuit has described this requirement as follows:

> Complementing the expansion of federal jurisdiction to ensure uniformity and fairness is CAFA's class action settlement notice requirement, 28 U.S.C. § 1715, which was intended to "provide a check against inequitable settlements." S.Rep. No. 109–14, at 35 (2005), 2005 WL 627977, at *34; *see In re Uponor, Inc.*, F1807 Plumbing Fittings Prods. Liab. Litig., 716 F.3d 1057, 1064–65 (8th Cir.2013). Section 1715 requires notice of a proposed settlement to be served on the "appropriate" federal and state officials—typically the Attorney General of the United States and "the person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant." 28 U.S.C. § 1715(a). In addition, § 1715 prohibits a court from ordering final approval of a proposed settlement until 90 days after the appropriate government officials were notified. *Id.* § 1715(d). The statute is equally clear that it shall not "be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials." *Id.* § 1715(f). These requirements are

---

[3] Section 1715(b) provides in part as follows: "Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of [various documents and information, including the complaint]."

> intended to give states a role in ensuring that citizens are equitably compensated in class action settlements, but states are free not to participate, leaving that task to the courts, which ultimately retain discretion to approve or disapprove any settlement, regardless of a state's intervention.

*California v. IntelliGender, LLC*, 771 F.3d 1169, 1172-73 (9th Cir. 2014).

At the preliminary approval stage, neither Plaintiffs' counsel nor defense counsel filed any documentation regarding federal and state officials as required under the Class Action Fairness Act Settlement Notice (the CAFA Notice). Upon filing of the motion for final approval of the Class Action Settlement, the Court reviewed the filing and noted that there were no indications that the parties had complied with the requirements under 28 U.S.C. §1715(b).

On February 17, 2026, Plaintiff filed a notice of compliance with 28 U.S.C. § 1715, which provided the following:

> On February 5, 2026, Defendant Leprino Foods Company served a Notice of Proposed Settlement In Accordance with the Class Action Fairness Act, 28 U.S.C. § 1715 (the "CAFA Notice"), on the Attorney General of the United States, the Office of the Attorney General for the State of California, the Director of the Department of Industrial Relations, and the California Labor & Workforce Development Agency. Attached hereto as Exhibit 1 is a true and correct copy of the CAFA Notice.

(ECF No. 78 at 2).

Here, no governmental entity has participated in this case or raised any objection to the settlement. Accordingly, this factor does not weigh against approval.

### 6.  The reaction of the class members to the proposed settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529; *see also Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021) (observing that a court may assess the reaction of class members by considering "how many class members submitted claim forms and objections" at the final approval stage).

After the class notice was issued, the class members reacted favorably to the proposed settlement terms in that there were no objections and only one request for exclusion. (ECF No. 95, p. 4). Further, no class members appeared at the hearing to voice any objections. This "absence of a negative reaction[] strongly supports settlement." *Chun-Hoon v. McKee Foods*

21

*Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Manzo v. McDonalds Rests. of Cal., Inc.*, 2022 WL 4586236, at *8 (E.D. Cal. Sept. 29, 2022) ("The lack of any objection weighs in favor of final approval of the settlement").

Accordingly, this factor weighs in favor of approval.

### 2. **Collusion (*Bluetooth* Factors)**

"The potential for collusion reaches its apex pre-class certification because, among other things, (1) the court has not yet approved class counsel, who would owe a fiduciary duty to the class members; and (2) plaintiffs' counsel has not yet devoted substantial time and money to the case, and may be willing to cut a quick deal at the expense of class members' interests." *Briseño*, 998 F.3d at 1024.

The Court now turns to the *Bluetooth* factors, which are indications courts evaluate to determine whether class counsel have allowed their own interests to infect settlement negotiations— (1) whether counsel receives a disproportionate amount of the settlement; (2) whether there is a clear "sailing agreement"; (3) and whether the agreement contains a "kicker" or "reverter" clause. *Briseño*, 998 F.3d at 1024. The Court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the Court must assume a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The Court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach,

"[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the Court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent award, is the "benchmark" amount of attorneys' fees, but courts may adjust this figure if the record shows special circumstances justifying a departure. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942. In evaluating a percentage for attorneys' fees, the Court is required to "consider[] all the circumstances of the case and reach a reasonable percentage." *Vizcaino*, 290 F.3d at 1048. Such circumstances include (1) the results reached for the class; (2) the risk to class counsel; (3) counsel's performance; and (4) the amount sought to be awarded compared to the market rate. *Id.* at 1048-49.

The proposed settlement contains a clear sailing provision, *i.e.*, a provision that Defendants will not object to a certain fee request. Notably, it states that Defendants will not oppose a fee award that does not exceed 1/3 of the settlement and will not oppose costs that do not exceed $30,000 (ECF No. 63 at 16). However, there is no "reverter" clause, *i.e.*, a provision that fees not awarded revert to Defendant rather than the class fund. Rather, the settlement agreement expressly states that "Any portion of the requested attorney fees' and/or costs not approved by the Court shall be added to the Net Settlement Amount." (ECF No. 63-1 at 22).

Here, Plaintiff requests an award of attorneys' fees in the amount of $94,658.66, or one-third of the amount of the GSA. (ECF No. 75 at 16). Plaintiff notes that Class Members were informed of Class Counsel's request for attorneys' fees and no one objected to the requested attorneys' fees and costs. (*Id.*).

Plaintiff generally indicates that the fee award is warranted based on significant benefits that Plaintiff and Class Counsel have conveyed upon the class. Plaintiff states that the case presented significant risk to Plaintiff, his counsel and Class Members because of Defendant's numerous defenses. (ECF No. 75 at 28). Additionally, Class Counsel expended time and costs in

the litigation of the case, knowing the risks of the action. Class Counsel argues that they accepted these burdens while knowing the risk of losing was real, and as the sole payment for Class Counsel was based on contingency, the risk was significant. (*Id.*).

Moreover, the Court appreciates the amount of recovery of the potential maximum value of the case, which is 13.559% and is well in line with precedent.

In short, The Court finds that the requested attorneys' fees fall within the range of reasonableness warranting final approval. The Court notes that 33% request is higher than typically awarded. However, the Court recognizes that this case lost the potential for a significant award due to the *Vasquez* action, which caused two of the three causes of action to be barred.

Next, the Court crosschecks the percentage award with the lodestar method to determine if the fees sought from the common fund are reasonable. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) ("[W]e have encouraged courts using the percentage-of-recovery method to perform a cross-check by applying the lodestar method to confirm that the percentage-of-recovery amount is reasonable."). The lodestar is determined by multiplying a reasonable hourly rate by the reasonable number of hours spent on the case. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (explaining the loadstar method). When the lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's hours." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (citation omitted).

> Plaintiff's motion states as follows
>
> The declaration of Class Counsel evidences the fact that they devoted approximately 141.20 hours of time to this litigation to date. See Agnew Decl. ¶ 31, Ex. A. These hours are summarized in the time and task charts that are attached to the Agnew Declaration. In addition, Class Counsel expects to expend an additional three hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, attending the final approval hearing, and further conferring with Settlement Class Members regarding the case status. *See id.* Thus, Class Counsel will have expended 144.20 hours through final approval. See id. Applying counsel's hourly rate of $800, a lodestar of $115,360 is established for the amount of work spent through final approval. See id. at ¶ 32. Thus, the fee application is supported whether by the crosscheck lodestar method discussed herein, or by the percentage of the common fund discussed in the preceding sections

(ECF No. 75 at 30).

First, the Court concludes that the 144.20 hours expended in litigation this case to be

24

reasonable given that the case went through discovery and has been pending since 2022. Turning the amount of fees requested, Plaintiffs' counsel seeks $ 94,658.66 for 144.20 hours, resulting in a recovery of approximately $656 per hour.  This amount is above the prevailing rate for attorneys in this area.  *Monterrubio v. Best Buy Stores, L.P.*, No. 2:11-CV-03270-MCE-AC, 2013 WL 12432761, at *9 (E.D. Cal. Nov. 20, 2013) (noting that prevailing hourly rates in the Eastern District of California are in the $400/hour range in employment class action case). However, the Court finds that the fees are nevertheless reasonable given the contingent nature of the award and the substantial amount of time spent before any recovery of fees.

Lastly, the Court turns to costs, "[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros*, 303 F.R.D. at 375 (citation omitted). And attorneys may recover "reasonable litigation expenses incurred for the benefit of the class." *Sanchez*, 2015 WL 4662636, at *20. Costs may also be awarded under California law to an individual who prevails on a PAGA claim. *See* Cal. Lab. Code § 2699(g).

Here, the requested amount of reimbursement of costs is $23,789.43. The costs are all related to litigation and have been detailed in the declarations provided by class counsel. Additionally, as previously stated, Defendant has agreed to not oppose any request for reimbursement of costs up to $30, 000. (ECF No. 75 at 30-31).

As such, the Court finds the amount of costs sought for reimbursement fair and reasonable.

### 8.    Class representative service payment

A court may award incentive payments to named plaintiffs in class action cases. *Rodriguez*, 563 F.3d at 958-59. The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.* To justify notable disparities between a class representative award and what other class members receive, a Plaintiff must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed

plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In keeping with that admonition, courts have declined to approve incentive awards that represent an unreasonably high proportion of the overall settlement amount or are disproportionate to the recovery of other class members. *See Ontiveros*, 303 F.R.D. at 365-66 (finding an incentive award of $20,000, comprising 1% of the common fund, to be excessive under the circumstances, and reducing the award to $15,000, where class representative spent 271 hours on the litigation and relinquished the opportunity to bring several of his own claims in order to act as class representative)*; see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000). In reducing an award, courts have noted that overcompensation of class representatives could encourage collusion by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives. *See Staton*, 327 F.3d at 977-78; *see also Radcliffe*, 715 F.3d at 1165.

To evaluate the reasonableness of a requested service payment, the Court may consider several factors, including the number of the named plaintiffs receiving such payments, the time and actions undertaken by the class representatives, the fairness of the hourly rate, and the proportion of the total settlement spent on such awards and comparison to the average award to the class members. *See, e.g., In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 947 (9th Cir. 2015) (considering the number of named plaintiffs that received an incentive payment, the amount of the incentive award, and the proportion of the total incentive award compared to the total settlement fund); *Ontiveros*, 303 F.R.D at 366 (considering the actions undertaken and evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close to the average per class member amount to be received"); *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *10 (N.D.

26

Cal. Jan. 29, 2016) (noting that "courts consider the proportionality between the incentive payment and the range of class members' settlement awards"). Lastly, Courts have found a service award of $5,000 to be "presumptively reasonable." *See Weiner v. Ocwen Fin. Corp.*, 2024 WL 4458383, at *6 (E.D. Cal. Oct. 10, 2024); *Wong v. Arlo Techs. Inc.*, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021) (noting that "[s]ervice awards as high as $5,000 are presumptively reasonable" in the Ninth Circuit and collecting cases).

Here, the settlement agreement provides for an "enhancement payment," up to $12,500 intended to compensate named Plaintiff and in exchange for execution of a general release of all claims, including a waiver under California Civil Code § 152. (ECF No. 63 at 15; ECF No. 75 at 15). However, the only support provided for this relatively high award is

> [T]he Enhancement Payment is justified by the extraordinary risks, burdens, and contributions assumed by Plaintiff in serving as the class representative. From the outset, Plaintiff knowingly accepted material litigation and financial risks not borne by absent class members, including the potential exposure to Leprino's costs in the event of an unsuccessful outcome. He also understood—and experienced—that proceeding as a class and representative action would significantly prolong the litigation and require sustained personal involvement. Dominguez Decl. ¶ 5. Those risks were magnified here because Plaintiff served not only as the named plaintiff in this Action, but also as the representative plaintiff in related PAGA and class proceedings against Leprino, asserting overlapping Labor Code violations. See id. at ¶¶ 5-6; Section II-C-2, supra. In doing so, Plaintiff assumed heightened personal, professional, and reputational risk over an extended period of time, well beyond what is typically encountered by a class representative in a single action.
>
> Plaintiff's efforts and sacrifices further support approval of the full requested amount. He devoted substantial time to the prosecution of this matter, including extensive communications with counsel, document production, discovery review, and deposition preparation and testimony, investing approximately 42 hours in this action alone. See Dominguez Decl. ¶ 7. He also accepted the real risk of workplace and reputational consequences, including potential retaliation and adverse perceptions by current or future employers, concerns he credibly weighed before agreeing to proceed. See id. at ¶ 8. Notwithstanding those risks, Plaintiff elected to move forward to vindicate workplace rights affecting many employees. Finally, Plaintiff agreed to a broader release than that required of absent Class Members, including a waiver of unknown claims under Civil Code section 1542. See id. at ¶ 10. Under these circumstances, the requested $12,500 Enhancement Payment reasonably compensates Plaintiff for his exceptional service, personal risk, and tangible contributions, and remains modest in light of the benefit achieved for the Class.

(ECF No. 75 at 31-32).

The proposed payment represents about 4.4% of the gross settlement amount ($12,500 /

27

$283,976.00). Plaintiff's enhancement payment is well over 100 times the average $92.12 estimated to go to the average class member. And the Court notes that the requested award is substantially higher than the $5,000 incentive award that has been recognized as "presumptively reasonable" by some courts. *Austin v. Foodliner, Inc.*, No. 16-CV-07185-HSG, 2019 WL 2077851, at *8 (N.D. Cal. May 10, 2019).

While there is only one named Plaintiff in this case, and the Court is not faced with having to determine whether multiple named plaintiffs were necessary to prosecute this case and whether multiple awards are thus considered fair collection, the Court finds difficulty in awarding the requested enhancement payment. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("In the proposed consent decree in this case, 29 named class representatives are designated to receive payments totaling $890,000. Compared to the three cases just mentioned, the different orders of magnitude in the present case concerning the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment—here up to $50,000, with an average of more than $30,000—are obvious.").

The Plaintiff claims that during litigation he spent approximately 42 hours on various tasks related to the case. However, this work, in addition to the claims of extraordinary risks that Plaintiff took in bringing this lawsuit, does not differ from what other similarly situated Plaintiffs in other class actions. In those actions, an enhancement payment of $5,000 was "presumptively reasonable," and at this time, the Court can find no reasoning as to why Plaintiff's position warrants an excessive increase. *See Weiner v. Ocwen Fin. Corp.*, 2024 WL 4458383, at *6 (E.D. Cal. Oct. 10, 2024); *Wong v. Arlo Techs. Inc.*, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021) (noting that "[s]ervice awards as high as $5,000 are presumptively reasonable" in the Ninth Circuit and collecting cases).

However, the Court appreciates that Plaintiff will not receive any part of the settlement allocated because as he states, "I also agreed, as part of this settlement, to execute a broad general release of all claims, including a waiver under California Civil Code section 1542, which is broader than the release provided by absent class members based on his waiver of individual claims against Defendant and the timing of his departure. "(ECF No. 75-7 ¶10). Yet, The Court does not believe that Plaintiff's relinquishment of his own claims, for the benefit of the class,

warrants an award of $12,500. *See Ontiveros*, 303 F.R.D. at 366 (considering plaintiff's relinquishment of his own claims in evaluating incentive award and reducing the award to $15,000 where class representative spent 271 hours on the litigation); *see also Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000). Simply put, the $7,500 increase from the $5,000 presumed reasonable award amount is an incentive award the Court does not believe is warranted. As such, the Court must be vigilant in scrutinizing this incentive award. *Radcliffe,* 715 F.3d at 1165.

Accordingly, the Court finds that an incentive award of $7,500 is a more reasonable amount and accurately reflects Plaintiff's efforts and risk undertaken to prosecute this action.

### 9.      Costs of a settlement administrator

The Court previously conditionally approved the third-party settlement administrator Phoenix Settlement Administrators ("Phoenix"). (ECF No. 63 at 15).  Plaintiff has provided the declaration Taylor Mitzner, a case manager for Phoenix, who notes that the settlement administrator has performed and will continue to perm certain class administration duties

> Pursuant to the *Joint Stipulation of Class Action Settlement* ("Settlement Agreement" or "Settlement") for this matter, Phoenix was responsible for: (i) preparing, printing, and mailing the *Notice of Class Action Settlement* ("Notice"); (ii) responding to inquiries from Class Members; (iii) reviewing the number of qualifying wage statements each Class Member earned during the period from October 17, 2023 to February 24, 2024 ("Class Period"); (iv) determining the validity of letters indicating a request to be excluded from the Class Settlement ("Requests for Exclusion"), written objections to the Class Settlement ("Objections"), and/or dispute regarding the number of wage statements submitted by Class Members; (v) calculating the Net Settlement Amount and the Individual Settlement Shares to Class Members; (vi) calculating and issuing the Individual Settlement Payments and distributing them to Settlement Class Members; (vii) issuing the payment to Class Counsel for attorneys' fees and costs, the Enhancement Payment to Plaintiff; and (viii) such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or as the Court orders.

(ECF No. 75-2 ¶2). Additionally, the declaration states the requested Settlement Administration Costs are $11,995.00. (*Id.* ¶12).

Given that the settlement administrator has undertaken and will continue to undertake its duties, the Court will approve the payment of $11,995.00 to Phoenix Settlement Administrators.

## V.   CONCLUSION AND ORDER

Based on the foregoing, IT IS RECOMMENDED as follows:

1. Plaintiff's motion for final approval of the class action settlement (ECF No. 75) is GRANTED in part;

2. The following settlement class is certified: All non-exempt employees of Leprino Foods Company who performed work in California from October 17, 2023 through February 24, 2024.

3. The Court approves a $283, 976.00 gross settlement amount.

4. Plaintiff Christopher Dominguez is approved as the class representative for the settlement class and shall receive a $7,500 class representative service payment.

5. Kristen Agnew, Larry Lee, Max Gavron, and Kwanporn "Mai" Tulyathan of Diversity Law Group, P.C. are approved as class counsel for the settlement class and the Court approves an award of $94, 658.66

6. The Court approves an award of $23,789.43 in costs.

7. The Court approves Phoenix Settlement Administrators as the settlement administrator and payment of $11,995.000 to it as costs.

8. Upon completion of administration of the settlement, the settlement administrator will provide written certification of such completion to the Court and counsel for the parties.

9. Because there have been no objections to the settlement, this order is considered effective for implementation purposes on the date that the Court enters this order granting final approval of the settlement.

10. Within 15 days of this order being entered, Defendant shall issue the gross settlement amount, plus its share of payroll taxes, to the settlement administrator.

11. By no later than December 1, 2026, Plaintiff's counsel shall file a declaration from the settlement administrator setting forth the disbursements that were actually made, including any uncashed checks and status of process of forwarding unclaimed funds to the State Controller.

12. The Clerk of Court is directed to issue a final judgment consistent with this order and then to close this case.

30

13. The Court shall retain jurisdiction over this case for the purposes of supervising the implementation, enforcement, and interpretation of the settlement agreement and this order.

IT IS SO ORDERED.

Dated:   **June 4, 2026**        /s/ _Eric P. Grom_
                         UNITED STATES MAGISTRATE JUDGE

31